[Civ. No. 1290.   Third Appellate District.—June 24, 1915.]

## A. L. SPOON, Respondent, v. A. D. SHELDON et al., Appellants.

ACTION FOR LABOR PERFORMED AND MONEY EXPENDED—ESTABLISHMENT OF TOWNSITE—ACTS OF PROMOTER—LIABILITY OF OWNER—AGENCY.—In this action to recover a sum of money for labor performed and for money paid and expended in connection with the laying out of a town, it is held that the court was warranted in finding from the evidence that the promoter of the enterprise, who employed all the help and exercised general power of supervision over the work, was the agent of the owner of the townsite, and, therefore, authorized to employ the plaintiff and his assignors to perform the services and make the expenditures referred to in the complaint, and to purchase such articles or goods as were necessary in carrying out the enterprise.

ID.—EVIDENCE—DECLARATIONS OF PROMOTER.—Declarations made by the promoter of the enterprise, in the absence of the owner of the townsite and the person jointly interested with him, that he was the representative or agents of the two defendants in the inauguration and carrying out of the scheme are inadmissible.

ID.—AGENCY—EVIDENCE—EXTRAJUDICIAL STATEMENTS.—Agency cannot be established by the extrajudicial statements or the declarations *in pais* of one pretending to act as agent, and testimony of such statements or declarations is incompetent and inadmissible for that purpose.

ID.—LIABILITY OF JOINTLY INTERESTED PARTY—SUPPORT OF FINDING.—In this action it is held as to the connection of the other defendant

with the scheme that while the testimony appears to be less satis-
factory than that addressed to the question of the relation of the
owner of the townsite to the promoter of the enterprise, it suffi-
ciently shows that such defendant was jointly interested in both the
townsite and the proposition to locate a town thereon.

ID.—FINDINGS—INFERENCE OF FACT—APPEAL—PRESUMPTION.—The in-
ference of one fact from others, unless such fact is a necessary
conclusion from those others, must be made by the trial court, and
if the facts that it has found are such as might authorize different
inferences therefrom, it will be presumed that the inference made
by the trial court was one that will uphold, rather than defeat,
its judgment.

ID.—AGENCY—INFERENCE FROM CIRCUMSTANCES.—Where the authority
of an agent is unwritten, and express oral authority is not satis-
factorily shown, such authority may be implied from the acts and
circumstances shown.

APPEAL from a judgment of the Superior Court of Las-
sen County and from an order denying a new trial. H. D.
Burroughs, Judge.

The facts are stated in the opinion of the court.

Pardee & Pardee, for Appellants.

R. M. Rankin, and Grover C. Julian, for Respondent.

HART, J.—This is an action to recover from the defend-
ants the aggregate sum of $2,981.80 for labor performed
and for money paid and expended by the plaintiff for the
defendants at the alleged special instance and request of the
latter.

The complaint is in six counts, four of which are on
claims assigned to the plaintiff by as many different persons
for labor performed for or supplies furnished to the defend-
ants.

The defendants, Johnson and Sheldon, answered the com-
plaint, specifically denying the averments of each of the
counts thereof.

The defendant, Cromwell, although duly served with sum-
mons, failed to answer the complaint, and a judgment up-
on such default was entered against him.

The trial was by the court sitting without a jury. The
court disallowed the greater portion of the amount sued for
and set forth in the second count, disallowed the assigned

claims set up in the fifth and sixth counts, and found in favor of the plaintiff for the balance alleged to be due him in the other counts, amounting to the total sum of $1,909.20. Judgment was rendered and entered accordingly.

The defendants, Sheldon and Johnson, appeal from the judgment and the order denying them a new trial.

The defendants, Johnson and Sheldon, are residents of Seattle, Washington. Johnson, it appears, is a man of great wealth, and Sheldon, for a period of fourteen years prior to the time of the trial of this action, in September, 1913, was his bookkeeper and private secretary.

Sheldon became acquainted with the defendant, Cromwell, at Seattle, at some time in the year, 1911.

Sheldon, was the owner of forty acres of land at a point in Lassen County where the N. C. O. Railroad intersects with the Western Pacific Railroad. A scheme to locate a town on said land was conceived and it appears that Cromwell, after whom the town was named, entered into some sort of engagement with Sheldon whereby he (Cromwell) was to inaugurate and promote the enterprise. The work of platting and laying out the town was proceeded with and completed, town lots put upon the market and buildings for hotel and general merchandising purposes started on the way to construction.

During all this time, Sheldon and Johnson were at the townsite on but one occasion.

Cromwell employed all the help and exercised general power of supervision of and over the work. Among those so employed, were the plaintiff and his assignors.

The theory of the plaintiff is that Cromwell, in promoting the enterprise and establishing the town of Cromwell, was acting as the agent of the defendants, Sheldon and Johnson, and the trial court so held and decided.

Sheldon admitted that he was the owner of the townsite, caused it to be surveyed, platted, and divided into lots and employed Cromwell to sell the lots on commission.

The evidence showed that, while at the townsite arranging for the location of a town thereon, and after the employment of the plaintiff, Sheldon was called to Seattle on account of the illness of Johnson. Just prior to taking his departure from the townsite for Seattle, he said to the plaintiff that he would soon return, and that, in the mean time,

Cromwell would have charge of the affairs of the townsite. After reaching Seattle, Sheldon addressed letters to Cromwell and therein he referred to business connected with the promotion of the enterprise, and requested Cromwell to say to the plaintiff that he would soon return and have a talk with him (the plaintiff). Other witnesses testified to having seen Cromwell and Sheldon go over the property and heard them talk together on matters concerning the new town.

The above is only a brief synopsis of the testimony directed to the discovery of the relation existing between Cromwell and Sheldon with respect to the enterprise, but it is sufficient to show that the court was warranted in finding that Cromwell was Sheldon's agent and that, so acting for Sheldon, he was authorized to employ the plaintiff and his assignors to perform the services and make the expenditures referred to in the complaint, and to purchase such articles or goods as were necessary for carrying out the scheme to establish a town.

In considering the testimony directed to the establishment of Sheldon's liability or, in other words, that Cromwell, in the promotion of the enterprise referred to was Sheldon's agent, we have disregarded declarations by Cromwell, made in the absence of both Sheldon and Johnson, ·that he was the representative or agent of those two defendants in the inauguration and carrying out of the scheme; for it is firmly settled that agency cannot be established by the extrajudicial statements or the declarations *in pais* of one pretending to act as agent and that testimony of such statements or declarations is incompetent and inadmissible for that purpose. (*Kast* v. *Miller & Lux,* 159 Cal. 723, 727, 728, [115 Pac. 932] ; Meachem on Agency, sec. 101; *Ford* v. *Lou Kum Shu,* 26 Cal. App. 203, [146 Pac. 199], and cases therein cited.)

Now, as to the connection of the defendant, Johnson, with the townsite and the scheme to establish a town thereon, it is to be remarked that, while the testimony appears to be less satisfactory than that addressed to the question of Sheldon's relation to Cromwell in the prosecution of the enterprise, it is believed that it sufficiently shows that Johnson was jointly interested with Sheldon in both the townsite and the proposition to locate a town thereon.

A written opinion was filed and prepared in the case by the learned trial judge, in which he summed up the evidence and set forth his reasons for the conclusion reached by him upon the facts. This opinion is incorporated in the transcript, and from it we learn that the testimony upon which he predicated the finding that the defendant, Johnson, was interested with Sheldon in the enterprise as a part owner thereof was that which disclosed the following facts: That on one occasion Johnson visited the townsite and with Cromwell looked it over; that Cromwell introduced the plaintiff to Johnson, whereupon the latter remarked, addressing the plaintiff: "I have heard a good deal about you from my 'side-kicker' here," referring to Cromwell, and that Johnson thanked the plaintiff for "helping us out on the townsite"; that the witness McKechnie (one of the parties assigning to the plaintiff the claims set out in the complaint), who was employed on the townsite on the occasion of Johnson's visit thereto, was at that time introduced to Johnson by Cromwell, and of McKechnie Cromwell, addressing Johnson, observed: "This is one of our strong men that stayed with us and helped make this road and we will see the road as we go out"; that Johnson on that occasion asked Cromwell: "Where are those springs you have been telling me about and how far are they from here?" and added: "We don't want no more well; we better have springs"; that, upon the same occasion, to the witness McQueen (another of the plaintiff's assignors), upon being introduced by Cromwell to Johnson, the latter said: "I have heard a great deal about you from Mr. Cromwell, my side-kicker."

It is to be conceded that the precise signification of the term, "side-kicker," when used under ordinary circumstances, would be difficult to decipher, or clearly to apprehend. It is a coined expression, which, unlike a few of such inventions, has never been accorded the dignity of a place in the dictionaries and is without any standing in lexicology. As a matter of common knowledge, we can say that it is not an uncommon expression in the vernacular of the street, is often used in colloquial conversation, and may with equal propriety be used in expressing a social relationship between the parties to whom applied as for the purpose of conveying the idea that they are business partners or have business interests in common. It is, therefore, very clear that, taken

27 Cal. App.—49

alone, the term is so vague and indefinite as to be of little, if any, force as proof that Johnson was a partner of Sheldon or otherwise interested in the townsite or the building of a town thereon. But Johnson's remark concerning the well and the springs and his expression of thanks to Spoon for "helping us out on the townsite," whereby he clearly evinced considerable interest in the work in progress upon the property, may justly be viewed as tending in no small degree to prove that he was interested with Sheldon in the enterprise, and no doubt the trial court, so viewing those expressions and taking into consideration the fact that Johnson visited and inspected the property, and interpreting the term "side-kicker" as used by Johnson by the light of these facts, concluded that he thus meant and intended to imply that there existed between himself and Cromwell a business relationship in respect of the matter of promoting a town on the townsite. This is by no means an unreasonable view from all the facts and circumstances and the conditions shown to exist, and while the showing thus made to establish Johnson's connection with the enterprise and so fix his liability for the acts of Cromwell in the management of the business is not very strong, still we cannot bring ourselves to say that the conclusion reached by the trial court upon that proposition is not sufficiently supported. It is true that Sheldon, both as a witness called by the plaintiff and as a witness in behalf of the defense, positively declared that Johnson was in no way connected with or interested in the townsite or the plan for building up a town thereon, still the credibility of the witnesses and the weight or evidentiary value of the testimony, were matters to be determined by the trial court, and there is nothing appearing upon the face of the testimony contained in the record before us which would justify this court in declaring that the trial court abused its discretion in attaching, as was obviously the case, no probative significance or force to Sheldon's asseverations that Cromwell was not the agent of himself and Johnson in the transactions involved in the scheme to establish the proposed town.

As before stated, so far as Sheldon is concerned, there can hardly be a possible doubt that, being the owner of the land on which the town was proposed to be located, and having placed Cromwell in charge thereof, he invested the latter

with the powers of an agent, with authority to do and per-
form all acts necessary to the consummation of the object
of the enterprise. So far as Johnson is concerned, there is,
perhaps, some ground for saying that the court might with
apparent justness have found from the evidence that he
was not interested in a business sense in the enterprise, and
that his interest in the affair did not extend beyond the
bounds of his personal solicitude for the business welfare
of his friend and private secretary, Sheldon, which latter
hypothesis was sought to be supported by Sheldon in his
testimony before the court. But this is not to say that the
decision of the trial court as to Johnson's connection with
the enterprise is not sustained by the proofs or is based
upon an hypothesis or theory of which the testimony is not
reasonably susceptible. Quite often it happens that dif-
ferent inferences may reasonably be drawn from a fact or
set of facts, and, so far as Johnson is concerned, this is one
of those instances. And, as is said in the case of *Gould* v.
*Eaton,* 111 Cal. 639, 644, [52 Am. St. Rep. 201, 44 Pac. 319]:
"The inference of one fact from others, unless such fact is
a necessary conclusion from those others, must be made by
the trial court, and, if the facts that it has found are such
as might authorize different inferences therefrom, it will
be assumed that the inference made by the trial court was
one that will uphold, rather than defeat, its judgment."
(Citing *Breeze* v. *Brooks,* 97 Cal. 72, [22 L. R. A. 257, 31
Pac. 742]. See, also, *Cauhape* v. *Security Savings Bank,*
118 Cal. 82, 84, [50 Pac. 310]; *Nevills* v. *Moore Mining Co.,*
135 Cal. 561, 566, [67 Pac. 1054].)

The rule is also well settled that, "where the authority
of an agent is unwritten, and express oral authority is not
satisfactorily shown, such authority may be implied from
acts and circumstances shown." (*Anglo-Californian Bank*
v. *Cerf,* 147 Cal. 393, [81 Pac. 1081]; Reinhardt on Agency,
sec. 203; *Ford* v. *Lou Kum Shu,* 26 Cal. App. 203, [146 Pac.
199].) This last mentioned rule has peculiar application
to the case of the defendant, Johnson.

The findings as to the amounts due on the several pleaded
claims appear to be amply supported.

Some objections are urged against the rulings of the trial
court in admitting and excluding answers to certain ques-
tions. These objections we have carefully examined. Some

of the testimony admitted over objection by the defendants—such, for instance, as the allowance of testimony of declarations *in pais* of Cromwell for the purpose of proving agency—was, as above explained, inadmissible, but, as shown, the written opinion of the trial court is in the transcript, and, while it is no part of the record or cannot supplant or perform the function of findings, we may look to it to ascertain the considerations arising from the evidence in the record which influenced the trial judge in his decision, and having done this, we are warranted in saying that therefrom it clearly appears that the trial court, in making its findings, excluded from consideration all such testimony.

We do not think that any of the other rulings complained of, admitting that they were erroneous, were prejudicial to any substantial right of the defendants.

The judgment and the order appealed from are affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 23, 1915.