[Civ. No. 1538.    Third Appellate District.—November 14, 1916.]

## WILEY B. ALLEN COMPANY (a Corporation), Appellant, v. THAMA M. WOOD, Respondent.

APPEAL—ORDER DENYING NEW TRIAL—EFFECT OF CODE AMENDMENT—NONAPPEALABLE ORDER.—Under the amendment of 1915 to section 956 of the Code of Civil Procedure, no appeal lies from an order denying a motion for a new trial, but the points made before the trial court in support of the motion may be reviewed on an appeal from the judgment.

ID.—AGENCY—AUTHORITY OF LOCAL MANAGER OF PIANO COMPANY.—A local manager of a piano company who has authority in making sales of pianos to accept second-hand pianos in part payment and to receive money for the company from its patrons and to execute

and deliver receipts therefor in its name, has not the implied authority to satisfy an indebtedness of a purchaser of a piano to the company by assuming himself personal liability for such indebtedness, in consideration of the settlement of his own personal indebtedness to such purchaser.

ID.—CONDITIONAL SALE OF PIANO—RECOVERY OF POSSESSION—RENDITION OF STATEMENTS—LACK OF FORFEITURE.—The right to recover the possession of a piano sold under a contract, which provided that title to the instrument should remain in the seller until paid for in full, and that should there be any default in payments the seller should immediately have the option to enforce payment of the whole amount or retake the instrument, is not forfeited by the rendition, after the commencement of the action to recover such possession, of monthly statements to the purchaser of the installments due accompanied with demands for their payment.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order denying a new trial. Charles O. Busick, Judge.

The facts are stated in the opinion of the court.

Fred J. Goble, for Appellant.

White, Miller, Needham & Harber, for Respondent.

HART, J.—This is an action in replevin and arises out of a conditional sale of a piano to the defendant by the plaintiff.

The contract for the sale was reduced to writing and was entered into by the parties at the city of Sacramento on the fifth day of June, 1913, and the agreement was so dated. The agreement is in substance as follows: That the defendant was to pay the plaintiff the sum of one thousand dollars, at the latter's office, in the city of San Francisco, for said piano as follows: A "Star Piano Oak," etc., valued at three hundred dollars; two hundred dollars on the fifth day of June, 1913, and $20 or more every month thereafter, beginning on July 1, 1913, with interest at the rate of eight per cent per annum on balance remaining unpaid, interest payable at expiration of the contract. The agreement expressly stipulates that the title to the said piano shall remain in the plaintiff "and under its direction until paid for in full"; that should there be any default by the defendant in the payment of any one of the monthly installments as above specified, "then the whole

amount of this contract becomes at the option of the Wiley B. Allen Company immediately due and payable, it being elective with the Wiley B. Allen Co. to enforce payment or retake the said instrument.''

The contract contains many other provisions which are not particularly material to the questions submitted by this appeal.

The complaint alleges that on the tenth day of April, 1914, the defendant made a payment of $40 on said piano under the terms of said agreement, but that since the payment of the said sum of $40 on said date, the defendant has wholly failed and refused to make any other or further payments in accordance with the terms of the said contract; that after the payment of the said sum of $40 further monthly payments in the sum of $20 each became due, and that the plaintiff made demand upon the defendant for the payment thereof, and that the defendant failed and refused and still fails and refuses to pay the same; that the defendant refused, prior to the commencement of this action, to proceed further with said agreement. It is alleged that the total amount paid by the defendant on said piano under the terms of the said agreement is $690 and no interest, and that, at the time of the commencement of this action, there was due the plaintiff under the said agreement the sum of $310 and interest, amounting, to September 1, 1914, to the sum of $38.81.

The prayer is for a return of the piano, or in case return thereof cannot be had, for the sum of one thousand dollars, the alleged value thereof.

The answer admits the agreement and that title to the piano remained in the plaintiff, but that such title was at all times since the execution of said written agreement, subject to the rights thereunder of the defendant; denies all the other vital averments of the complaint, and alleges that the total amount paid by defendant on said piano under said agreement is the sum of $990. After filing the answer, the defendant filed the following supplemental answer:

''Now, the defendant above named, and by her supplemental answer to the amended complaint signed by Mr. Goble on file herein avers as follows: That subsequent to the commencement of this action, plaintiff waived any and all forfeitures claimed under the amended complaint in this action, and under the contract set forth as Exhibit One to the amended com-

plaint herein, in this, to wit: That after the commencement
of this action, plaintiff has from time to time, and monthly
rendered and furnished to defendant statements by the terms
of which the plaintiff claims that defendant is still indebted
to plaintiff for the purchase price of said piano.''

The cause was tried before a jury and verdict found in
favor of the defendant. Upon the verdict so returned judg-
ment was entered, and the plaintiff appeals from the judg-
ment and also presents a purported appeal from the order
denying it a new trial. There is no longer an appeal from
an order denying a motion for a new trial, and the purported
appeal therefrom in this case is, therefore, void. But the
points made before the trial court in support of the motion for
a new trial may be reviewed on the appeal from the judgment.
(Code Civ. Proc., sec. 956; *Tormey* v. *Miller,* 31 Cal. App.
469, [160 Pac. 858].)

The controversy between the parties here arises over an
alleged payment of the sum of three hundred dollars by the
husband of the defendant on the piano in question.

The general facts are: At the time the piano was sold to the
defendant, one Lyle P. Conner was the manager of the Sacra-
mento branch of the plaintiff's business. Conner, it appears,
was indebted to one E. A. Janssen, and the last named was
indebted to W. G. Wood, the defendant's husband, in the sum
of three hundred dollars. Janssen had caused Conner's auto-
mobile and other property to be attached and his salary to
be garnished in an action to recover his indebtedness against
Conner. On the twenty-eighth day of January, 1914, the
three parties above named, in pursuance of negotiations previ-
ously had and then pending, entered into a written contract
whereby it was agreed that the several accounts between said
parties were to be adjusted as follows: Wood was to cancel as
satisfied the indebtedness of Janssen to him in the sum of
three hundred dollars, in consideration of a credit in a like
sum by Janssen on the indebtedness due to the latter from
Conner, and the latter, in consideration of said transaction,
was to credit the piano account of the defendant with the sum
of three hundred dollars. This arrangement was carried out,
so far as Janssen and Wood were concerned. As to Conner,
while he executed and delivered to Wood a receipt for the sum
of three hundred dollars as a payment on account in the
piano transaction between the plaintiff and Mrs. Wood, it

transpired that he did not enter a credit in the piano account in the books of the plaintiff of the three hundred dollars so claimed to have been paid thereon, or make any other record in the appropriate books of the concern of said transaction.

The plaintiff claims that Conner was wholly without authority to enter into the agreement above referred to for and on behalf of it, and that, therefore, the agreement, so far as it purports to bind it, is entirely without force.

The defendant, on the other hand, submits that there are two propositions upon either of which or both the judgment should be sustained: 1. That the evidence at least shows that there was ostensible authority in Conner to accept a payment on account of the debt due the plaintiff from the defendant for the piano under the arrangement provided by the tripartite agreement, so far as that transaction related to Conner and the defendant's husband; 2. That, after the filing of the complaint in this action, the plaintiff made several demands upon the defendant for the payment of installments under the contract for the sale of the piano which were overdue, and that by making such demands, the plaintiff waived its right to a forfeiture of the contract and the moneys already paid thereunder; that, therefore, the plaintiff lost its right to retake possession of the piano, and that its sole remedy is in the recovery of whatever might be the balance due on the contract for the sale of the instrument.

W. G. Wood, the husband of the defendant, testified that he conducted the negotiations on behalf of his wife for the purchase of the piano as well as those resulting in the execution of the agreement between himself, Janssen and Conner; and the general tenor of his own testimony would seem to warrant no other conclusion than that the arrangement entered into between him and Conner, as stipulated in the tripartite agreement, whereby he was to obtain for the defendant a credit of three hundred dollars on her piano account with the plaintiff, was wholly founded upon and solely induced by the mere representation of Conner that he (Conner) was entitled to receive from the plaintiff certain commissions, which he could and would transfer to the credit side of the defendant's piano account in consideration of the said tripartite agreement. Wood testified, in part:

"I acted for my wife, the defendant, in the purchase of this piano. . . . The original price was one thousand dollars. . . .

"Direct Examination: Q. What information have you as to Mr. Conner's agency for the Company during the time the receipts were given? A. I simply knew he was their local manager in Sacramento. . . .

"Q. At the time this three hundred dollar receipt was given to you, Mr. Conner represented to you, did he not, that he had that credit with the Company, in excess of ·that amount? A. Yes.

"Q. Did he also represent to you that he would transfer that credit to your account? A. He did.

"Q. Did he afterward tell you that he had done so? A. No. I do not know that we ever discussed it afterward.

"Q. He gave you this receipt at that time? A. He gave me the receipt for three hundred dollars."

On cross-examination: "Q. You stated that Mr. Conner told you that he had three hundred dollars due commission from the Wiley B. Allen Company at the time? A. Yes.

"Q. At the time he gave you that receipt for three hundred dollars, which is in evidence A. He told me he had more than that coming; he was working on a salary and on a commission; his commissions on the books were considerably more than that.

"Q. Did you know as a matter of fact, whether he had any commission due him or not? A. I was not in a position to know anything about that.

"Q. Did you take any steps to find out? A. No.

"Q. Did you make any inquiries from any other source at all to find out whether he had any commissions coming to him? A. No. While I am not sure he had, I accepted his word."

The witness then proceeded to say that, while he was prepared to pay Conner three hundred dollars cash—that is to say, to receive into his physical possession from Janssen the three hundred dollars and then turn it over to Conner—there was no actual money exchanged or paid to Conner. "I agreed on this transaction," he continued, "principally on account of being that it would enable Conner to straighten out his affairs with Janssen. His automobile was under attach-ment; he stated that this was the only way in which he could straighten out his affairs—I should judge the payment was just as good that way as any other. . . . I do not know whether the Wiley B. Allen Company got it or not. I did

not concern myself whether they got that three hundred dollars.'' The witness (W. G. Wood) testified that the negotiations leading to the agreement between himself, Janssen, and Conner, were pending or in progress in the month of December, 1913. Under date of December 16, 1913, said Wood addressed the following letter to the plaintiff, at the latter's office in the city of San Francisco:

''Gentlemen: In reply to your favor of the 9th inst., addressed to my wife, I wish to say that the payments for this month and last were not made on account of the fact that I have been waiting for an account of Mr. Conner's, your Sacramento agent, to be adjusted. I have sufficient interest in this account to offset the balance due, and I have been holding payments per agreement with Mr. Conner pending the settlement of this account.

''I asked him some time ago to explain the situation to you, but I judge he has failed to do so.''

Evidently in reply to the above letter, the plaintiff addressed the following to W. G. Wood:

''Dear Sir:

''Your letter of the 16th received. Mr. Conner is employed by us on a straight salary and his personal obligations have nothing to do with the Company's account.

''If Mr. Conner is indebted to you, we would suggest that you proceed in the customary manner to make your collection. We hardly feel that we can consent to allow our account to run unpaid for this reason. The matters are not related to one another in any way.

''The installments now due on the account to $40.00, and we would greatly appreciate your check to bring this up to date.          Yours very truly,
                    ''THE WILEY B. ALLEN COMPANY.''

The above testimony clearly shows, as before stated, that the three hundred dollar transaction between Conner and Wood was entirely a personal affair between them; that Wood relied wholly upon the representations made by Conner that there was, at the time of said transaction, due the latter from the plaintiff commissions which were sufficient in amount to enable Conner to credit the defendant's piano account with the sum of three hundred dollars, and that Conner would so credit said account. In brief, the testimony unquestionably shows that the ''three cornered'' agreement involved nothing

more than the adjustment or settlement of personal accounts between the three parties thereto, and that Conner's position in the transaction amounted only to an agreement by him to assume, in consideration of Wood's settlement of the attachment suit instituted by Janssen against him (Conner), personal liability for a portion of the balance due from the defendant to the plaintiff. There is absolutely no evidence, either of a direct or circumstantial character, showing or tending to show that the plaintiff knew of the arrangement entered into between Conner and W. G. Wood prior to or at the time of the making of the agreement, or that it sanctioned or approved or ratified said arrangement thereafter. To the contrary, the letters passing between W. G. Wood and the plaintiff, noted above, not only show that the plaintiff repudiated the arrangement which was the basis of the tripartite agreement, so far as it concerned Conner and W. G. Wood, but that the latter himself must have viewed said agreement as involving a matter entirely between and personal to himself and Conner.

The defendant claims, however, that there is evidence clearly supporting the proposition that Conner had ostensible authority to bind the company to the arrangement into which he entered with W. G. Wood. The evidence so referred to is of the following facts: That Conner was "designated as the Company's manager"; that the company furnished Conner with business cards upon which were printed the name of the company and the words, "L. P. Conner, Manager"; that Conner was, in the sale of pianos, authorized to accept secondhand pianos as in part payment for the pianos sold, and that in the transaction with the defendant he did accept a secondhand piano as in part payment for the piano sold. It is hence argued that, having those "broad and general powers" necessarily implied from the fact that he was plaintiff's manager, and having the power to accept property (second-hand pianos) in the place of coin in payment for pianos by him sold, Conner was apparently vested with authority by his principal to bind the company to any arrangement which he might make in relation to contracts for the sale of pianos; or, speaking concretely, he was ostensibly authorized to make for the company the arrangement to which he and Wood agreed. After calling attention to the facts thus referred to, counsel for the defendant proceed to say that "it is true as appellant

asserts, that an agent cannot trade his principal's credit for his own advantage, but where the agent represents that he has paid the principal or has credited the principal with the amount on the agent's claim against the principal, the debtor has a right to rely and act thereon. This is especially true where the agent is a collecting agent and has been held out as such. The receipt in this case came from one who was accustomed to collect and give receipts and his statement that he had paid his principal is binding on the principal.''

The application of the rule of ostensible agency or authority depends primarily upon the acts or conduct or words of the principal, and not upon the acts or conduct or words of the agent. The rule is that a principal will be bound by those acts of his agent which he has given other persons reason to suppose are done by his authority, but, as suggested, such authority arises by implication and can only spring from the words, acts, or conduct of the principal.

The rule, which involves the doctrine of estoppel, and which, when invoked in proper cases, stands as a shield against the working of unjust injury to third parties, is stated as above, and as so stated applied in the cases cited by the attorneys for the defendant as in purported support of their theory of the facts of this case, viz.: *Leavens* v. *Pinkham & McKevitt,* 164 Cal. 242, 248, [128 Pac. 399]; *Robinson* v. *American Fish & O. Co.,* 17 Cal. App. 212, 219, [119 Pac. 388]; *Stevens* v. *Selma Fruit Co.,* 18 Cal. App. 242, 250, [123 Pac. 212]; *Spoon* v. *Sheldon,* 27 Cal. App. 765, 770, [151 Pac. 150]; *Anglo-Californian Bank* v. *Cerf,* 147 Cal. 393, [81 Pac. 1081].

There is, as we view the record, absolutely no evidence showing that the plaintiff by any act or conduct or words spoken held out to the public or to the defendant that Conner was authorized for the company to settle any of the accounts of the plaintiff in the manner indicated by the tripartite agreement. The fact that Conner was authorized as manager of the company to receive money for it from its patrons, and execute and deliver receipts therefor in its name, cannot reasonably be said to warrant or justify the inference or the conclusion that he (Conner) was authorized to adjust or settle his own personal indebtedness to a debtor of the company by substituting himself as the debtor of the company in the place and stead of the party owing the debt. The authority to exe-

cute a receipt for money paid to him for the company does not imply authority to make settlements with debtors of the company on a basis different from that prescribed by the company's contracts with its debtors, or to deliver receipts for money in the company's name when none is actually paid.

Nor does the fact that Conner was authorized to accept second-hand pianos as in part payment for a new piano sold through him by the company imply authority in him to receive in payment of the debts due to the company property other than coin. The company's business is that of selling pianos, and it is of so common a practice for piano dealers to take and make some allowance for an old instrument when making a sale of a new one that it can justly be declared to be a matter of common knowledge that such is the established custom, and that the taking of an old piano as part payment for a new instrument of that character is one of the recognized common practices of the business of selling pianos. Hence, we repeat, the circumstance that, in selling a piano to the defendant, the plaintiff accepted from her a second-hand piano in the trade or as in part payment for the new piano, is not to be regarded as evidence from which the defendant or her husband or the public generally was justified in forming the belief or even the remotest impression that Conner was vested with the authority as the plaintiff's agent to cancel or satisfy the defendant's indebtedness to the company by assuming himself, for a consideration entirely personal to himself, personal liability for such indebtedness.

As to the second point made by the defendant, we can find no occasion for holding that the plaintiff forfeited its right to retake possession of the piano in question because it made demands upon the defendant after the commencement of this action for the payment of installments under the contract and in which she was in arrears. The contract between the plaintiff and the defendant was for the sale of the piano—a mere conditional sale—and the title to the instrument remained in the plaintiff. As the supreme court said, in considering a contract precisely similar to the one here, in *Hegler* v. *Eddy*, 53 Cal. 597: "The rules of forfeiture do not seem to have any application to the question of the right to the possession of the property. Forfeiture involves both the idea of losing property by a delinquent party, and the transfer of it to another without the consent of the delinquent. Here the owner-

ship was not transferred; for it remained in the plaintiff and his assignors; nor was the right of possession transferred; for the defendant had only such right to the possession as the contract gave, which was merely the right to the use and possession until default should be made in the payment of installments. The plaintiff's right to the possession comes from his ownership of the property; and this right, while he remains the owner, is merely suspended, by virtue of the contract, until the defendant shall make default in paying the installments, and thereupon his right of possession ceases; but it cannot be said to be transferred to the plaintiff.'' (See *Pacific Carbonator Co.* v. *Haydes & Son,* 26 Cal. App. 607, [147 Pac. 988].)

The act of instituting this action by the plaintiff to regain possession of the piano constituted the exercise of its right of election under the contract to retake the instrument, and it would appear to be most unreasonable, even if the rules of forfeiture were applicable to such contracts as the one involved here, to hold it to be true, as a legal proposition, that the effect of submitting statements to the defendant showing the installments due and overdue would be to destroy the right of election already exercised. Of course, if the defendant had, after the commencement of this action, paid all installments due on demands therefor made by the plaintiff after the complaint herein was filed, then an entirely different situation would be presented. But there is no evidence that she did this or offered to do it.

For the reasons stated herein, the judgment is reversed and the cause remanded.

The appeal from the order denying a new trial is, as above declared, void, but to avoid any possible confusion which might arise from a failure to make any disposition thereof, the order is that said appeal be, and the same is hereby, dismissed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 11, 1917.