[Civ. No. 7328.   Second Appellate District, Division Two.—February 7, 1933.]

C. R. LAURENCE, Respondent, v. LOS ANGELES JUNK CO. (a Corporation), Appellant.

500

Abe Richman for Appellant.

Everett V. Prindle and Arch G. McLay for Respondent.

ARCHBALD, J., *pro tem.*—Plaintiff and defendant entered into a contract December 15, 1928, in which defendant agreed to sell plaintiff "six hundred tons of old newspapers, Clear No. 1, not to exceed 3% colored matter. To be packed either 272 lbs. or 280 lbs. to the bale, at the option of the said C. R. Laurence, and guaranteed not to exceed 60 cubic feet to the ton; price to be $21.00 per net ton of 2000 lbs. f.o.b. Los Angeles harbor, if packed in ordinary second hand burlap," or "$20.50 per net ton of 2000 lbs. if packed in cement burlap. Three hundred tons of the above mentioned newspapers are to be delivered to the Los Angeles wharf for shipment per steamer during the month of February, 1929," and the balance during the month of March, 1929. Reservation for steamer space for the bales was to be made by plaintiff, who was to "furnish the said Los Angeles Junk Co., Inc., with all shipping instructions, permission to deliver the above named material to the Los Angeles wharf, stencils, marks, etc., at least fifteen days prior to the scheduled sailing of the steamer on which space reservation has been made". The contract also provided that "the above material is to be packed with 4 hoops (painted red) to each bale. Payment to be made to said Los Angeles Junk Co., Inc., after the steamship company issues bill of lading for the above named material." Apparently plaintiff notified defendant as to the number of pounds to be packed in each bale, and evidently selected the second-hand burlap pack as the one to be used. Defendant delivered 730,200 pounds under the contract and was paid

for the same by plaintiff. On or about the 18th and 20th of March, 1929, defendant delivered a total of approximately 231,920 pounds, baled as aforesaid, to the wharf at Los Angeles harbor, at which latter date it insisted upon being paid for the two lots so delivered and instructed the steamship company to hold the bills of lading and not deliver them to plaintiff except on defendant's order. Plaintiff refused to pay until the bills of lading were released, whereupon defendant declared the contract to be null and void and refused to proceed thereunder. From a judgment against it in the sum of $1,409.40 defendant has appealed.

The evidence is undisputed that the steamship company received its shipping instructions from plaintiff on March 22d and prepared bills of lading covering the two lots of bales on the same day, and that it would have delivered them to plaintiff had he called for them at any time prior to defendant's order of March 23d not to release them to plaintiff. It also appears without dispute that there were only four firms in Los Angeles that baled newspapers, including defendant. Plaintiff immediately addressed letters to the other three asking their prices to fill the contract, and over defendant's objection introduced in evidence two letters received in reply thereto. One such letter advised that the writer could not make deliveries in March, and the other, from Fireboard Products, Inc., agreed to do so, quoting a price of $27 per ton. Plaintiff was also permitted to testify that the third firm written to telephoned that it could not make delivery.

We agree with appellant that it was error to present such evidence as to the market or other price of paper to be furnished. Such error was harmless, however, as to the letter and telephone conversation saying that delivery could not be made. With regard to the letter of the Fireboard Products, Inc., Mr. M. C. Cooper, manager of the paper stock deliveries of such company, who wrote the letter and who was produced in court by plaintiff, testified that in his opinion the market value on March 26th of the paper called for by defendant's contract was $27 per ton, and that the price for the standard pack during March, 1929, was "around $22.50"; that the "market was up" and that the expense of the special pack called for by the contract, and the necessity of doing it "all on overtime to get it out on

502

the short time delivery", made the difference in cost. Apparently there was no paper similarly packed on the market, and we do not see how a more practical method of ascertaining the value of the paper to be delivered under the contract, under such circumstances and under sections 3308 or 3354 of the Civil Code, could be employed. No question was raised as to lack of qualification of the witness as an expert, and in view of the testimony we do not see how defendant was prejudiced by the introduction of the letter, which said no more than the witness.

Appellant also urges that the evidence does not sustain the finding made by the court to the effect that the excess value of the newspapers undelivered in the month of March, over and above the contract price, was $1,409.50—the difference between the value of the undelivered papers at $27 per ton and the contract price of $21. The only testimony on the part of plaintiff is that of Mr. Cooper. Defendant produced evidence that the market value of paper called for by the contract was between $20.50 and $21.50 per ton. There being a conflict in the evidence both as to price and as to whether or not the contract called for a special pack, and the trial court having adopted the higher price as the correct one—which necessarily implied a finding that a special pack was called for—it is not for us to say that the court did not properly act, so long as there is any evidence supporting the finding.

It is further contended that the court erred in finding that respondent was ready, willing and able to receive the balance of such papers. We find no merit in such contention. It is true that one of plaintiff's letters to defendant covering the dispute states that the goods "are not f. o. b. Los Angeles Harbor until they are loaded on board the steamer". A later letter, however, calls defendant's attention to the fact that plaintiff was informed by the steamship company that defendant had not released the paper, "so they are unable to issue bills of lading. I will not pay you for this paper until it is released". The letter further states that if defendant will abide by the terms of the contract all that would be necessary was for them to render invoices, "which will be paid in accordance with the terms of the contract". Appellant could have obtained the invoices from the steamship company at any time after

delivery of the bales on the wharf and presented them to respondent, who would have been obliged to pay under the contract. There seems to be no complaint in the evidence that respondent did not do everything required of him under the contract, and the only fault found seems to be that he did not pay the invoices when submitted. He was only required to pay "after the steamship company issues bills of lading", and this he seemed willing to do, but appellant's stop order made it impossible. There is ample evidence to support the finding complained of.

The claim is made that appellant's motion for a new trial should have been granted. Several affidavits were filed in support of the motion. One was by the president of defendant company, which stated in effect that he had talked with the witness Cooper some time before the trial and was told that the latter would be present at the trial and would testify that the paper described by the contract was "standard pack" the market value of which was $22 per ton, and that relying on such statement he did not go to the expense of procuring other witnesses from San Francisco as he otherwise would have done. Five affidavits from brokers or others dealing in old newspapers in San Francisco were also filed, which in effect stated that the paper called for by the contract in question was "standard pack", and that the market price of same in March, 1929, was $23, $21.50, $20.50/20.75, $22 and $22.50, respectively, f. o. b. wharf at either San Francisco or Los Angeles. The affidavit of Mr. Cooper, filed by respondent, denied the conversation as stated. The trial commenced December 19, 1929. From the record before us we are unable to tell how many days were consumed, but on the last day the case was continued to December 30th for argument. Appellant apparently did not ask for an opportunity to produce the San Francisco witnesses, of whom he must have known at all times, because of the surprise caused by the testimony of Cooper, and there would seem to have been ample time to have done so. The trial judge remarked at the time the motion for new trial was denied: "Certainly, if the court re-opened cases for newly discovered evidence under situations such as are shown in this case there would be no end of litigation. You had every opportunity to cross-examine Mr. Cooper and to get evidence here at the time of trial, if

you were surprised in any way." With that statement we are compelled to agree.

Judgment affirmed.

Craig, Acting P. J., and Stephens, J., concurred.