[Civ. No. 8959. Second Appellate District, Division Two.—December 31, 1934.]

ARLENE BREA, Respondent, v. BEN S. McGLASHAN, Appellant.

Rollin L. McNitt and Edythe Jacobs for Appellant.

John J. Craig and Miriam M. Olden for Respondent.

YANKWICH, J., *pro tem.*—The plaintiff sought to recover from the defendant the sum of $8,300. Judgment went for the plaintiff in the sum of $958.75. The amended complaint, upon which the cause was tried, was in two counts. The first count, denominated accounting, in substance, set forth the following facts: The defendant is the owner of a radio station known as KGFJ, located in the city of Los Angeles, which he was operating for hire and as an advertising medium and public broadcast. On April 8, 1931, plaintiff and the defendant entered into an oral agreement whereby the defendant employed the plaintiff as a solicitor for the purpose of obtaining radio advertising contracts for the defendant to be broadcast over the radio station. Carl G. McCrillis, who was then in charge of the advertising department of the defendant's radio station, was the representative of the defendant in making the agreement, and was acting within the scope of his employment, on behalf of the defendant and as his agent. The defendant confirmed the employment two or three days after the contract was made by stating to the plaintiff that the same was

satisfactory to him. The terms of the agreement were: plaintiff would work for the defendant as a radio advertising solicitor for a term of one year; that the plaintiff would use her own discretion as to the manner of soliciting for the radio advertising, and her efforts or prospects would not be interfered with. For her compensation, the plaintiff was to receive twenty-five per cent of the sums paid by the advertisers, upon contracts for radio advertising which the plaintiff procured. Plaintiff, in pursuance of the contract, interviewed various and numerous merchants and business houses for a period of approximately four months, for the purpose of procuring from them radio advertising contracts for the defendant. The complaint then alleged:

"That as a result of said interviews and of the work of plaintiff in soliciting said merchants, she began to obtain radio advertising contracts for the defendant, among which were the contracts of The May Company and Weaver-Jackson Company of Los Angeles. Plaintiff alleges that she had no knowledge of the amounts paid by said advertisers to the defendant for the reason the defendant refused to account to the plaintiff in any and all respects, and thereafter at all times the defendant refused to recognize the plaintiff as an advertising solicitor and refused to have any more business dealings with her whatsoever, and has ever since said time, viz.: on or about August 15, 1931, refused to recognize the plaintiff as his agent or employee in the subject hereinabove described; that prior to the time that the defendant refused to recognize the plaintiff any further in said matter the plaintiff had procured the oral consent of numerous other business concerns of Los Angeles to hold themselves in readiness to use time on the radio station of the defendant under the then current advertising rates of said radio station, among which companies were Bordens Milk Company, Simpson Fur Co., Women's Business Association, Welch Candy Company, Sawyers School of Business and Mission Candy Company.

"That the defendant, for the purpose of taking unfair advantage of the plaintiff, in some manner, ascertained the fact that the plaintiff had procured oral contracts for advertising from the above-mentioned companies and sent his agents, who are unknown to plaintiff, to said companies and solicited and obtained their contracts directly and con-

trary to the terms of his oral agreement with the plaintiff not to interfere with her prospects, and then and there prevented the plaintiff from obtaining said contracts to her damage in the sum of eight thousand dollars ($8,000.00) or more. Plaintiff here alleges that the names of the advertisers, which are advertising on defendant's radio station, as a result of plaintiff's work in soliciting the same and for which the defendant has refused to account to the plaintiff for her commissions under said contract, are unknown to the plaintiff and are within the special knowledge of the defendant, and plaintiff alleges that an accounting is necessary between said parties in order that the exact amount of damages may be ascertained.''

The second count, after incorporating some of the allegations just set forth, alleged that the plaintiff suffered damages in the sum of $300, by reason of moneys spent in carrying out the agreement as the agent of the plaintiff. The judgment was upon the first count.

It is the contention of the defendant that the first count of the complaint is uncertain, and that a demurrer to it upon that ground, as well as upon the ground of misjoinder, should have been sustained. The attack is directed particularly at the allegations of paragraph IV of the first count, which we have set forth in full. It is insisted that the allegations are uncertain in that the complaint does not set forth in full the radio contracts secured upon which the commission is sought, the conditions of the contracts as to length of time to run, as to the two firms who are mentioned in the contract, who the other merchants were shown the plaintiff interviewed, who the persons were who held themselves in readiness to enter into advertising contracts, and whether the plaintiff was to receive compensation for merely procuring the persons to hold themselves in readiness, how she was prevented from obtaining contracts from the persons in readiness, and how the $8,000 damages were suffered by her.

Our system of pleading aims at certainty. Uncertainty is made a ground of demurrer. (Code Civ. Proc., sec. 430, subd. 9.) The objection of uncertainty does not go to the failure to allege sufficient facts. It goes to the doubt as to what the pleader means by the facts alleged. (*Callahan* v. *Broderick*, 124 Cal. 80, 83 [56 Pac. 782]; *Butler* v.

*Wyman,* 128 Cal. App. 736, 740 [18 Pac. (2d) 354].)
■ The first count of the complaint was, in reality, a cause of action for an accounting. Under our system of pleading, a cause of action for accounting need only state facts showing the existence of the relationship which requires an accounting and the statement that some balance is due the plaintiff. (*Whann* v. *Doell,* 192 Cal. 680, 684 [221 Pac. 899].) ■ Ordinarily, no accounting is necessary between an employer and an employee. But where, as here, the payment is alleged to be in the form of a percentage of the moneys received by the employer, and the complaint alleged that the plaintiff did not know what moneys had been received through contracts procured by her, an accounting would be the only method of arriving at the amount due. (See *Arbuckle* v. *Clifford F. Reid, Inc.,* 118 Cal. App. 272, 275 [4 Pac. (2d) 978].) ■ A pleader is not required to state facts which are peculiarly within the knowledge of his opponent. Here, the complaint alleged sufficiently the employment, the manner of compensation, the performance of services showing *some* compensation to be due, and the fact that the correct amount could not be ascertained without an accounting. The additional allegation that the amount due was $8,000 was surplusage. Its inclusion did not make the complaint uncertain. Nor did it (as claimed by the defendant) render the count vulnerable, as stating two causes of action, without stating them separately. In *San Pedro Lumber Co.* v. *Reynolds,* 111 Cal. 588 [44 Pac. 309, 312], which was an action for an accounting against an agent, the complaint alleged various acts of misappropriation of moneys and property by the agent, and various acts of misconduct which resulted in losses to the principal, and prayed for an accounting to determine the exact liability. Overruling the contention that these allegations were uncertain, and that several causes of action were stated in one count, the court said:

"Such, then, being the nature of the action, and the facts averred warranting the institution of such an action, the points made by appellant that each averment of acts of misconduct by appellant constitutes a separate cause of action which cannot be properly joined with either of the others, and that the complaint is uncertain, etc., because it does not state more particularly how each item of alleged liability

arose, when it was created, and especially its amount, cannot be maintained. The purpose of the action was to call appellant to an accounting touching matters peculiarly within his knowledge and arising out of the trust reposed in him; and we think that for this purpose the cause of action is stated with sufficient particularity. (*West* v. *Brewster*, 1 Duer (8 N. Y. Super. Ct.), 647; *Green* v. *Brooks*, 81 Cal. 333 [22 Pac. 849]; *Rippe* v. *Stodgill*, 61 Wis. 38 [20 N. W. 645]; *Colonial etc. Mortgage Co.* v. *Hutchinson Mortgage Co.*, 44 Fed. 219.) And the character of the complaint is not changed by the averment that before the commencement of the action an investigation had shown that the respondents had suffered a loss of 'upward of sixty-five thousand dollars'.''

We conclude that the demurrer upon the ground of uncertainty and misjoinder was properly overruled.

■ Contesting the sufficiency of the evidence to sustain the judgment, the defendant insists that no authority is shown upon the part of Carl G. McCrillis to make the agreement with the plaintiff.

A brief summary of the testimony adduced on behalf of the plaintiff and of certain admissions will suffice to determine the question thus raised.

The plaintiff went to the studio of radio station KGFJ on May 18, 1931, in response to an appointment previously made by her. She walked over to an information desk and asked to talk to the ''Advertising Manager''. She was referred to Carl G. McCrillis, who was seated at a large desk in an office on the door of which was the sign: ''Station Manager''. After inquiring about her experiences in soliciting and selling, McCrillis gave the plaintiff a chart showing time and talent open, and stated to her, ''we would like to employ you here to go out and sell radio time and talent for us''. He assured her that her prospects would not be tampered with, and stated that they did not pay a salary, but that ''we pay 25% commission on all time and talent sold by each representative''. He asked her to report to him on the telephone every morning concerning her prospects, and gave her a sheaf of pamphlets to use in soliciting. He assured her that she could make $18,000 a year. She began to work the following day. At various times, she talked to McCrillis, telling him of the persons

whom she had seen. He gave her some blank forms of booking orders, addressed to the defendant and showed her how to fill them out.

She met the defendant for the first time the latter part of August or the first part of September. She had had an appointment with McCrillis. As he did not keep it, she asked to speak to the defendant concerning interviewing a prospect. The defendant said, "Don't bother to talk to me about it, McCrillis has charge of the sales people. He will handle that for you if you don't mind."

In July she informed McCrillis of the four prospects with whom she had been negotiating, which included the two upon which the trial court allowed her a commission, Weaver-Jackson Company and The May Company. After the two prospects were closed, through other persons, and the plaintiff complained to McCrillis and received no satisfaction, she talked over the telephone with the defendant. We quote from the record:

"A. Mr. McGlashan said 'Miss Brea, I am sorry, but there is not anything we can do about this Weaver-Jackson account.' And he said, 'Whoever brings in the account with a name signed on it is the one that is supposed ·to have it.' And I said, 'Do you mean to say, Mr. McGlashan, that if twenty representatives call on a person, a prospect, that the one who comes in the last of the twenty and signs up a contract would be the one to have it?' · I said, 'Mr. Mc-Crillis gave me to understand so distinctly so many times that absolutely my prospects would be protected, I would be protected in my prospects, and he told me that if I ever had any trouble with any of the salesmen to report it to him and he would put the skids under them; he said we do not stand for any foolishness here.'

"The Court: Now, you are giving the conversation you had with Mr. McCrillis.

"A. I said that to Mr. McGlashan on the phone.

"Q. By Mr. Craig: Did he stay there?

"A. He stayed right there and listened and Mr. McGlashan said, 'Well, there is not a thing I can do about it, Miss Brea. I am sorry.' He said, 'I appreciate your efforts so much, Miss Brea, and I appreciate that you worked hard with us, and your efforts and all, but there is not anything I can do about that.' I said, 'Is that business, Mr. Mc-

Glashan?' I said, 'In fact it is not business at all.' I said to Mr. McGlashan, 'It is an outrage, that's what it is.' I said, 'It is a shame and an outrage.' I said, 'I have worked for four and a half to five months and then you just tell me on the phone that you are sorry, there is nothing you can do about it.' I said, 'It is pretty poor business, Mr. McGlashan.' And he said, 'Well, we are young, Miss Brea, we can afford to make mistakes. In fact,' he says, 'we only have one fifteen minute period left now open.' I said, 'Well, that's strange.' I said, 'A couple of weeks ago you had about half of the time open, Mr. McGlashan.' I said, 'You have made some very rapid progress in the sale of time and talent in advertising that you have only one fifteen minute period open now.' He said, 'Another reason, Miss Brea, is I have understood, Miss Brea,' he said, 'that you were going out and trying to compete with our business with a list of prospects that you have of our business, put them on other stations.' I said, 'Mr. McGlashan, you tell me that's your business when I have talked over each list of names with Mr. McCrillis time and time again?' "

In the testimony of another salesman, Otto F. Gage, is found the statement that the defendant had informed him that McCrillis was in charge of salesmen and sales and that he was the advertising manager. The defendant admitted at the trial that McCrillis had told him that the plaintiff was "going to sell time", but claimed that she was to be merely a broker, acting for McCrillis, for which she was to receive a fifteen per cent commission and McCrillis ten per cent. The assistant manager of the station, H. Duke Hancock, knew that she was employed. McCrillis introduced her to him as "one of our new representatives".

Hancock, who is conceded to have had authority along with the defendant to employ agents, in talking to the plaintiff, referred to McCrillis as "your Manager". In one of the pamphlets issued by the radio station and given to the plaintiff, the photograph of McCrillis appears, with the following designation under it: "Carl G. McCrillis, Advertising Department". Along with it, are other photographs of persons, presumably heads of departments, designated as "Publicity Department", "Chief Technician", "Musical Director", and others, headed by the photographs of the defendant with the designation "Owner-Manager"

and that of H. Duke Hancock designated as "Assistant-Manager". The document evidences the clear intention to list persons in charge of the various branches of the work of the station, and is not consistent with McCrillis' claim that other salesmen wanted their photographs in the booklet but "they did not get them in time and they were left out."

The power to make a contract of employment may be inferred from the nature and necessities of the business entrusted to the agent or when the conduct of the principal is such as to clothe the agent with apparent authority to employ. (2 Cor. Jur. 658; *Seymour* v. *Oelrichs*, 162 Cal. 318 [122 Pac. 847].)

The admissions in the record, the literature issued by the station, the references to McCrillis as the advertising manager "in charge of salesmen and sales", would imply the right to employ solicitors of advertising and to agree with them as to compensation. Admissions made before a controversy arose are entitled to more weight than the denials made at the trial. (*Moore* v. *Grayson*, 132 Cal. 602, 605 [64 Pac. 1074]; *Stuart* v. *Lord*, 138 Cal. 672, 676 [72 Pac. 142].) From admissions of certain facts, others may be inferred. (*Houck* v. *General Development Co.*, 128 Cal. App. 623 [17 Pac. (2d) 1030]; *Dooley* v. *West American Commercial Co.*, 133 Cal. App. 58 [2 Pac. (2d) 766]; *American System of Reinforcing* v. *Breakers Hotel*, 217 Cal. 67, 71 [17 Pac. (2d) 138].) And it is significant to note that while in the last conversation with the plaintiff, the defendant admitted that he knew that she had worked on certain contracts, and claimed that she was not entitled to the commission because others had closed them, he made no mention then of any lack of authority upon the part of McCrillis.

These and other facts and inferences, fairly deducible from the record, warranted the trial court in finding that the plaintiff had been employed as a salesman, that McCrillis had the authority to bind the defendant by the agreement and that the defendant knew and approved all its terms.

When the authority of an agent is unwritten, and express oral authority is not satisfactorily shown, such authority may be implied from acts and circumstances shown. (*Anglo-Californian Bank, Ltd.*, v. *Cerf*, 147 Cal. 393, 399 [81 Pac. 1081]; *Ford* v. *Lou Kum Shu*, 26 Cal. App. 203, 208, 209 [146 Pac. 199]; *Spoon* v. *Sheldon*, 27 Cal. App. 765, 771

[151 Pac. 150]; *Eade* v. *Reich,* 120 Cal. App. 32, 37 [7 Pac. (2d) 1043].)

In setting forth the conditions of her employment, the plaintiff alleged in her complaint that she was to receive the stipulated compensation "upon contracts of radio advertising which the plaintiff procured". By giving to the word "procure" a narrow interpretation, the defendant contends that because the plaintiff did not actually secure a written contract from the advertisers who promised her advertising (and "bring in the check", to use a phrase employed by the defendant's counsel in one of the questions asked at the trial), the finding of the trial court that she was entitled to a commission upon two contracts is not sustained by the evidence. It is to be borne in mind that the contract of employment was not in writing. The defendant (through McCrillis) agreed that the plaintiff should receive twenty-five per cent of the moneys received by him from advertising procured by the plaintiff. The word "procure" does not necessarily imply the formal consummation of an agreement. The Century Dictionary gives the following as the meanings of the word: "To bring about by care and pains; effect; contrive and effect; induce; cause, as he procured a law to be passed." In its broadest sense, the word means to prevail upon, induce or persuade a person to do something. In this sense did the trial court interpret it, when it found in its findings, that the two contracts upon which it allowed a commission were secured "as a result of plaintiff's efforts". This was a correct interpretation of the contract. For otherwise, one might employ an agent to interview persons, and secure from them promises of contracts and then, by having another one "close" the contracts, deny the agent the fruit of his labor. The law does not sanction such action. On the contrary, the rule is that if an agent (or broker) is the inducing or procuring cause of the contract, he is entitled to the commission, even though the principal takes it out of his own hand and completes it. The originating cause, which ultimately led to the conclusion of the transaction, is held to be the procuring cause. (*Sessions* v. *Pacific Improvement Co.,* 57 Cal. App. 1 [206 Pac. 653]; *Hall* v. *Glantz,* 78 Cal. App. 49 [248 Pac. 258].) And where the evidence is conflicting, the conclusion as to the procuring cause is one for the trial court and

will not be disturbed on appeal. (*Jones* v. *Foster,* 116 Cal. App. 102, 108 [2 Pac. (2d) 582].)

The evidence of the plaintiff, which the trial court evidently believed, showed that The May Company contract had been promised her definitely. The testimony of the representative of the Weaver-Jackson Company, Emanuel Stoloroff, gave the plaintiff credit for her efforts with that company. There is also reference in the testimony to a letter written by Stoloroff, at the request of the assistant manager, Hancock, in which he expressed the opinion that the plaintiff had earned a commission for securing the Weaver-Jackson contract, and the statement of the defendant to Hancock that other salesmen had "gotten her (the plaintiff's) business". Under the circumstances, the plaintiff should not be denied the fruits of her labor, merely because her employer saw fit to send others to receive the benefit of her soliciting.

What has just been said also disposes of the contention that the trial court erred in receiving testimony relating to McGillis' declarations as to his authority before agency was actually proved. The order of proof is a matter of discretion, under the control of the trial court. (Code Civ. Proc., sec. 2042.) And while the admissions of an agent are not evidence of agency, they are admissible where *prima facie* evidence of agency is shown. (*Dooley* v. *West American Commercial Ins. Co., supra; Union Construction Co.* v. *Western Union Tel. Co.,* 163 Cal. 298, 305 [125 Pac. 242].) In this case, the evidence being sufficient to establish agency, there was no error in receiving the declarations of McCrillis at a time when the record did not, as yet, disclose proof of agency. Ultimately, it is the admissibility of the testimony in the light of the entire record which should determine whether error was committed, rather than admissibility as of the time when the evidence came in. Any other rule might impede rather than expedite the presentation of testimony. So the custom has grown of allowing testimony to come in, *provisionally,* subject to its being stricken if not connected up. And if this is not abused, and the case is tried without a jury, no harm can result. Were this not permitted, error might be predicated upon the admission of testimony at one stage of the trial, which facts subsequently adduced, made clearly admissible. This view has been adopted generally by our courts, notwithstanding

the provision of subdivision 5 of section 1870 of the Code of Civil Procedure to the effect that the acts and declarations of an agent (and partner) may be received in evidence "*after* proof of a partnership or agency". (*Bates* v. *Tower*, 103 Cal. 404, 406 [37 Pac. 385] ; *Jacobson* v. *Lamb*, 91 Cal. App. 405, 417 [267 Pac. 114] ; *Swanson* v. *Siem*, 124 Cal. App. 519, 525, 526 [12 Pac. (2d) 1053].)

There was, therefore, no error in the court's ruling upon the admissibility of the testimony, or in the denial of the motion of the defendant made at the close of the testimony, to strike the admissions of McCrillis that he was advertising manager. ■■■ The complaint, as appears from the outline at the head of this opinion, stated the circumstances of the employment of the plaintiff, in a detailed manner. The trial court, in its findings, contented itself with the statement, repeated several times, that the plaintiff was employed by the defendant. We see no merit in the contention that the findings are insufficient because they do not contain a more specific finding of agency. Only ultimate facts are required to be stated in findings. (*Murphy* v. *Bennett*, 68 Cal. 528, 530 [9 Pac. 738] ; *Phillips* v. *Stark*, 65 Cal. App. 136, 140 [223 Pac. 443].) The basis of the plaintiff's right of recovery was her employment by the defendant. Her right to receive compensation flowed from it. So when the court found, as a fact, that the plaintiff was so employed, the requirement as to findings upon material issues was complied with.

■■■ In support of his motion for a new trial, the defendant filed several affidavits. The most important of these was the affidavit of Mr. Gerry Fitzgerald, in which he denied the statement made by the plaintiff, at the trial, that he had definitely promised her The May Company contract. Other affidavits were to the effect that neither the defendant nor his counsel knew, "until after the commencement of the trial" of the Fitzgerald conversation or that Fitzgerald would deny it. In opposition to these affidavits, there was filed an affidavit by one of the plaintiff's counsel which stated that she had subpoenaed Fitzgerald as a witness, but that he had objected so vigorously to being drawn into the case and threatened to use his influence and that of his firm against the plaintiff that she released him from the subpoena.

Newly discovered evidence which justifies the granting of a motion for a new trial must be material evidence which could not have been discovered with reasonable diligence and produced at the trial. To be considered material, it must be of such character as to render a different result probable upon a new trial. (Code Civ. Proc., sec. 657, subd. 4; *Oberlander* v. *Fixen & Co.*, 129 Cal. 690, 691, 692 [62 Pac. 254]; *O'Rourke* v. *Vennekohl*, 104 Cal. 254, 256 [37 Pac. 930]; *Jones* v. *Foster*, 116 Cal. App. 102, 108 [2 Pac. (2d) 582].) Evidence which is merely cumulative and impeaching is not of this character. (*Bennington* v. *National Packing Co.*, 122 Cal. App. 313, 317, 318 [9 Pac. (2d) 857].) The evidence offered by these affidavits was purely cumulative and impeaching. While it is true that the conversation of the plaintiff with Fitzgerald stood undenied, it was the contention of the defendant and of his witnesses, throughout the trial, that the contract with The May Company was not the result of any effort upon the part of the plaintiff. The Fitzgerald affidavit was simply corroborative of this. Furthermore, there was no showing of diligence. The trial of the case lasted several days. The plaintiff testified to this conversation during the first day. Fitzgerald was employed by one of the leading mercantile establishments in the city of Los Angeles. The defendant could easily have communicated with him and asked him for his version of the conversation, and upon finding that it differed from that of the plaintiff could have compelled his attendance at the trial, to contradict her. The affidavits do not disclose why this was not done. Under the circumstances, the trial court was justified in finding that no diligence in procuring and producing the evidence was shown. (*Laurence* v. *Los Angeles Junk Co.*, 129 Cal. App. 499, 503, 504 [18 Pac. (2d) 985].) On the whole, there was no abuse of discretion in the denial of the motion for a new trial.

The judgment and order are affirmed.

Stephens, P. J., concurred.

Crail, J., concurred in the judgment.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 25, 1935.