[S. F. No. 156.     Department Two.— August 7, 1896.]

## C. F. BUCKLEY, RESPONDENT, *v.* S. SILVERBERG, APPELLANT.

113  673|<br>124  228|

AGENCY—SALE NEGOTIATED BY OSTENSIBLE AGENT — ACTION FOR PRICE— LIABILITY OF PRINCIPAL.—A principal is liable to an action for the price of cattle the sale of which was negotiated by an ostensible agent; and his agency is ostensible, when the business done by him, so far as open to the observation of third parties, was consistent with the existence of an agency, and where, as to the transaction in question, plaintiff's agent was justified in believing that he was dealing with him as defendant's agent.

ID.—EVIDENCE— CROSS-EXAMINATION —COLLATERAL MATTER.—Where collateral matter is brought out on cross-examination of a witness, the party cross-examining cannot afterward rebut the evidence so called out.

ID.—COLLATERAL CORRESPONDENCE—HARMLESS RULING.— The exclusion of collateral correspondence offered to show the relations between the defendant and the one claimed to be his agent, is harmless, where it is merely a repetition of the oral testimony on that point.

ID.—RATIFICATION OF ACTS OF ALLEGED AGENT — RETAINING BENEFITS— INSTRUCTION.—An instruction as to the ratification by the defendant of the acts of an alleged agent by retaining the benefits of the transaction, is proper where there is evidence to show a promise of defendant to pay a draft for the price of cattle sold after having received them, and after knowledge that the seller claimed that the person who negotiated the sale was the agent of the defendant, and where it appears that defendant thereafter slaughtered the cattle.

INSTRUCTIONS—APPLICABILITY TO EVIDENCE.—Either party has the right to have an instruction given to the jury based upon his own theory of the case, if there is any evidence to support it.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. JOHN HUNT, Judge.

The facts are stated in the opinion.

*T. M. Osmont*, for Appellant.

The court erred in excluding Whitt's letter to Silverberg, dated January 23, 1894, which was offered for the purpose of showing that Whitt was acting for himself in the Wright transaction. It was not a collateral matter. (*Robinson* v. *Nevada Bank*, 81 Cal. 106.) It was error, also, to exclude defendant's letter to Whitt, dated November 30, 1893, as it was written evidence of the understanding between Whitt and Silverberg, defining their relations. The instruction upon the subject of ratification of the acts of an alleged agent by retaining the benefits of the transaction was erroneous, as it was not warranted by the evidence. A ratification can arise only where there has been an assumption of agency. (*Puget Sound Lumber Co.* v. *Krug*, 89 Cal. 237; *Schultz* v. *McLean*, 93 Cal. 330; *Ellison* v. *Jackson Water Co.*, 12 Cal. 542; *Mitchell* v. *Minnesota Fire Assn.*, 48 Minn. 278; *Beebe* v. *Equitable etc. Assn.*, 76 Iowa, 129; *Harris* v. *San Diego etc. Co.*, 87 Cal. 526; 1 Am. & Eng. Ency. of Law, 438, 439; *Fellows* v. *Commissioners*, 36 Barb. 655; *Collins* v. *Snau*, 7 Robt. 633; *Hastings* v. *Bangor House Props.*, 18 Me. 436; *Beyers* v. *Hodge*, 19 N. Y. Supp. 830.) Plaintiff cannot charge defendant with the acts of the alleged agent, as plaintiff did not part with his cattle without ordinary negligence or upon the faith of the supposed agency. (Civ. Code, sec. 2334; *Harris* v. *San Diego etc. Co., supra; Doughaday* v. *Crowell*, 11 N. J. Eq. 201; *Carson* v. *Cummings*, 69 Mo. 325.)

*Mullany, Grant & Cushing*, for Respondent.

Where a principal accepts and retains the benefits of the transaction entered into by his alleged agent, with full knowledge of the facts, he is estopped from denying the authority of the agent. (Wharton on Agency, secs. 86, 87, 89.)

HAYNES, C.—This action was brought to recover from the defendant the sum of one thousand and thirty-two

dollars, the price of certain calves and beef cattle sold by plaintiff to defendant. A jury trial was had, and plaintiff obtained a verdict and judgment for said sum, with interest from March 5, 1894, and from said judgment and from an order denying a new trial the defendant appeals.

Defendant is a wholesale butcher doing business in San Francisco, and plaintiff also resides in said city, but owns a ranch at Goshen, in Tulare county, and had cattle thereon. Con O'Neill was plaintiff's manager and agent at the ranch, which is distant from the city about two hundred and forty miles.

On February 28, 1894, L. D. Whitt, whom plaintiff alleges was the agent of defendant, called at the ranch and proposed to buy a lot of thirty-six calves. O'Neill asked ten dollars per head for them. Whitt said: "I cannot pay that much, but I will go down and telegraph to Mr. Silverberg and see what he can pay for them." He thereupon sent to Silverberg the following telegram: "Can give you car calves, average two hundred and thirty, ten dollars. Wire me. L. D. Whitt"; and received the following reply: "You can pay only nine dollars. They must be fat. S. Silverberg." Whitt then offered nine dollars per head for the calves, and O'Neill accepted the offer.

The next day Whitt looked at some steers, for which O'Neill wanted five and one-half cents per pound. Whitt again telegraphed Silverberg as follows: "March 1, 1894. Will ship car calves to-night. What can I pay for car fat steers? Will average five hundred and fifty. Answer here at once." Under same date Silverberg replied: "Market low; cattle must be prime and fat to pay five cents. If not fat do not buy."

Mr. O'Neill testified that he saw the first telegram and the reply, and as to the second Whitt told him that he got a message that he could only pay five cents for good beef, and after looking at the cattle a second time he said he would give twenty-nine dollars and fifty cents per head for the steers, and this offer was accepted, and

Whitt gave him a draft on the defendant for one thousand and thirty-two dollars, the full amount of both purchases. O'Neill further testified that in making these sales he acted as agent for the plaintiff, and that Whitt said " he was buying the cattle for Mr. Silverberg," the defendant. Mr. Whitt notified the defendant by telegram on March 2d of the shipment of both lots, and they arrived on the 3d and were received by the defendant, who saw them as they were being driven to his stockyards.

Mr. Whitt came with the cattle to Oakland, and later in the day came to defendant's office and was informed by telephone from the stockyards by the defendant that the cattle were not worth the amount of the draft drawn in favor of the plaintiff, and he would not pay it. Mr. Whitt then said he would go and see the plaintiff, " and see what could be done," but he did not find the plaintiff and left town without seeing him. Later, on the same day, the defendant called on the plaintiff, and plaintiff's version of the interview is as follows:

" Silverberg called at my office on the 3d of March, and informed me in very strong language that this man Whitt had about played the devil with him. I said: 'What about it?' He said he had been buying cattle for him, Silverberg, and that he had bought them entirely too high; and I wondered why he should tell me about the matter. I said, with some surprise: 'Whose cattle were they?' And he said: 'They are your cattle.' I said I had not heard a word about it. Neither had I then. Then he told me these cattle had been bought by Mr. Whitt contrary to his instructions, and that he would not pay the draft. I said: 'I guess you will have to pay the draft if they are my cattle.' He then said that my man and Whitt were no doubt in 'cahoots,' and I got angry then and told him my man would not do anything of the kind."

The plaintiff further testified, on cross-examination, that there had been some little transactions between O'Neill and Mr. Whitt which were paid by drafts on de-

There is no conflict in the evidence as to the facts immediately connected with the sale made by plaintiff's agent. As to whether Whitt was in fact the agent of Silverberg there is a direct and material conflict, if the conclusions of Whitt upon the one hand and Silverberg upon the other, drawn from the same circumstances, are considered. There was no misunderstanding between them as to what each was to do, but, as to what relation between them was thereby constituted, they came to opposite conclusions.

In the view we take of the case it is not necessary to consider whether Whitt was in fact defendant's agent; it is sufficient to say that so far as third parties were concerned that part of the business open to their observation was consistent with the existence of an agency; and, as to the transaction in question, plaintiff's agent was fully justified in believing that Whitt was dealing with him as defendant's agent.

"An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." (Civ. Code, sec. 2300.)

The fact that Whitt before purchasing either the calves or the cattle telegraphed the defendant to know what he could pay, and received in reply instructions or information so worded as to clearly show that defendant was not only interested in the purchase in some way, but that he controlled the price to be paid, would naturally lead anyone to believe that he was in fact the purchaser; and, though the defendant may not have intended to hold Whitt out as his agent, he certainly did not exercise ordinary care to prevent O'Neill from believing that he was the principal and Whitt merely his agent. He knew that Whitt on two previous occasions had given O'Neill drafts for purchases drawn in favor of the plaintiff which he had paid without question, and that Whitt had neither money nor credit to make the purchase on his own account, and that a draft would be drawn upon him by Whitt for the full

amount of the purchase. As a business man the defendant must have known that a draft upon him would not be received, and the property delivered, if the seller knew that its payment depended upon his estimate of the value of the cattle after their arrival in San Francisco, and, therefore, only an advancement to Mr. Whitt, and that the natural inference of the seller would be that Whitt was the agent of defendant and purchasing for him. If anything further were necessary to put the defendant on his guard, the wording of the telegrams sent him by Whitt should have led him to an explicit statement in reply to the effect that it made no difference to him what Whitt paid for the cattle, but he would not pay drafts for more than he thought, upon inspection, would be realized from sales of the beef.

The defendant was not prejudiced by the rulings of the court in excluding the letter of Mr. Whitt to the defendant in regard to the cattle bought by Wright, nor in excluding the letter of defendant to Whitt of November 30, 1893. The first of these letters directed the defendant to deliver to Mr. Wright the account of sales and net returns of the cattle " shipped by me to you on commission, and which arrived here on January 8, 1894." This is conceded by counsel to be a collateral matter. It was brought out by the defendant upon the cross-examination of plaintiff's witness, Mr. Whitt, that defendant refused to pay the draft for the Wright cattle after their delivery, and that the matter was settled between the defendant and Wright upon terms unknown to him; and he was further asked the general question whether "the cattle involved in this action were bought by you under the same arrangement you had with Mr. Silverberg touching other lots of cattle purchased by you?" To which the witness replied, "Why, I would so consider it, certainly." After plaintiff rested, and upon the examination of the defendant in his own behalf, the letter in question was produced and offered in evidence. In the examination in chief plaintiff put no question to the witness in reference to any other purchase than

that involved in this action, and it was not competent to go into a collateral matter upon cross-examination and afterward rebut the evidence so called out.

The letter from defendant to Mr. Whitt, offered upon the examination in chief of the defendant, related also to collateral matters, and, so far as it contained anything illustrating the relations between himself and Mr. Whitt and their mode of doing business, was a repetition of his oral testimony.

Defendant also excepted to an instruction given to the jury upon the subject of ratification of the acts of an alleged agent by retaining the benefits of the transaction. The objection was that the evidence did not warrant the instruction.

We think this exception is not well taken.   Defendant knew on the 3d that the draft in favor of the plaintiff was for the full purchase price of the cattle and calves, and that plaintiff claimed that Whitt was defendant's agent in the transaction, and had declared his purpose of holding him liable for the purchase price. He knew that Whitt did not draw against a fund then in his hands, but against the cattle shipped to him and which he had received.   On the next day, March 4th, defendant wrote to Whitt that he would pay the draft, though the cattle would fall short of the amount by one hundred and fifty dollars, rather than have any quarrel with the plaintiff, and on the 5th commenced slaughtering the cattle, and after he had commenced to slaughter them, and thus put it out of his power to restore the property either to Whitt or the plaintiff, he changed his mind, not because he had learned any new fact touching the transaction, but because he found that he had overestimated their value.   Having, under these circumstances, slaughtered the cattle, and not only received the profit which he would have derived from slaughtering them on commission, but had the entire proceeds, which, upon any theory as to the relation which in fact existed between him and Whitt, became his upon his assuming the payment of the draft, we think there was evidence

which justified the court in giving the instruction excepted to. Either party has the right to have an instruction given to the jury based upon his theory of the case, if there is any evidence to support it, and the judgment will not be reversed because we may find such evidence insufficient to justify the verdict upon that theory, if it appears that upon other facts, covered by proper instructions, the verdict is right.

The judgment and order appealed from should be affirmed.

SEARLS, C., and BRITT, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

HENSHAW, J., TEMPLE, J., McFARLAND, J.

Hearing in Bank denied.

BEATTY, C., J., dissented from the order denying a hearing in Bank.