[S. F. No. 2182.    Department Two.—November 24, 1900.]

## SARAH LOUISA NICHOLSON, Administratrix, etc., Respondent, v. RANDALL BANKING COMPANY, Appellant.

Action Against Bank—Evidence—Pass-book—Harmless Ruling.—In an action against a banking company to recover the balance of an account of money deposited, where the genuineness of the pass-book relied upon was fully established by competent evidence, and it was properly admitted in evidence, the admission of testimony relative to its genuineness, objected to as not the best evidence thereof, is harmless, even if erroneous.

Id.—Evidence of Attorney—Genuineness of Pass-book Shown by Client.—An attorney may testify to the genuineness of a pass-book in the possession of his client, which was exhibited to him by the client, and which the attorney personally knew to be in the handwriting of the cashier of the banking company defendant. Such evidence is not in reference to any privileged communication between the attorney and client, though he advised him with reference to the account.

Id.—Authority of Cashier — Acquiescence of Banking Company.— Where the banking company defendant, by a long course of acquiescence in the acts of the cashier, has held him out as having authority to do those acts, it cannot afterward repudiate them; and it is immaterial whether he had or had not power to do them merely by virtue of his position as cashier.

Id.—Transfer of Deposit Accounts from Former Bank—Action of Cashier—Estoppel of Banking Company.—Where the business of a former bank kept by the president of the banking company was turned over to it, as successor thereof, and the former bank ceased to do business, and the cashier of the latter issued its own pass-books to the depositors in the former bank, for the balance of their accounts, whereupon they became the customers of the banking company, and its cashier, without any objection from its directors, kept those accounts and rendered statements thereof, showing a transfer from the former bank, and its depositors were thereby induced to believe and act upon the belief that their deposits and the accounts thereof had been properly transferred to and assumed by the banking company, it is bound by the action of its cashier, and is estopped from questioning its liability upon such accounts.

Id.—New Trial—Surprise—Refusal of Cashier to Testify.—The refusal of the cashier to testify for the banking company, when called as its witness, to prove that the plaintiff's testator did not make the deposit in the banking company for which he

was credited, on the ground that such testimony might possibly tend to criminate the witness, and that defendants were surprised by such refusal, is not ground for a new trial, where there was no endeavor to compel an answer, and where it fully appeared at the trial that the deposit was made in a former bank, to the business of which the banking company succeeded, and by its acts became responsible for such deposit.

APPEAL from a judgment of the Superior Court of Humboldt County and from an order denying a new trial.    G. W. Hunter, Judge.

The testimony of J. M. Melendy, the attorney referred to in the opinion, was to the effect that he had known J. S. Murray, for twenty-one years, was familiar with his handwriting, and knew the pass-book in question to be in his writing; that it had been shown to him by Archibald Nicholson, for whom he was drawing a will, and whom he advised with reference to the account; and that the pass-book was in Nicholson's possession when it was shown to him.    Further facts are stated in the opinion of the court.

S. M. Buck, and C. M. Wheeler, for Appellant.

Gregor & Connick, and Sevier & Selvage, for Respondent.

VAN DYKE, J.—Appeal from the judgment and from an order denying a new trial.    The action was for the recovery of the sum of four thousand dollars, the complaint containing two counts—one for money deposited, the other upon an account stated.

The contention on the part of the defendant is that the four thousand dollars alleged to have been deposited by Archibald Nicholson in his lifetime with the defendant bank never was in fact so deposited, and the bank never owed that sum to said Nicholson; that the transfer of the balance due said Nicholson as a depositor in the private bank of A. W. Randall to the account of said Nicholson in the defendant bank was without any consideration moving to the defendant, and was done by the cashier of said defendant bank without its authority.

The court below found, among other facts, that for several years prior to the second day of January, 1892, A. W. Ran-

dall was a private banker and doing and conducting a banking business in the city of Eureka, this state, and that during such time J. S. Murray was said Randall's cashier, and G. L. Roberts his teller. That on said second day of January, 1892, and thence down to April 17, 1897, the said defendant company commenced and conducted a banking business in said city of Eureka; that said defendant for some time occupied the place of business theretofore occupied by said Randall, and that said Murray and Roberts were cashier and teller respectively of said defendant, and A. W. Randall was president thereof; that the other officers of said defendant bank left the entire management of the affairs of said bank in the hands of said president and cashier; that said president and cashier conducted the business of said bank without consulting with the directors of said bank; that the cashier of said bank issued the statement and pass-book in suit to Archibald Nicholson in due course of business of said bank in the usual manner that such statements and pass-books were issued by said defendant bank; that said statement and pass-book is in the regular form usually issued by said defendant bank; that said Archibald Nicholson had no notice that said account had not been duly transferred into the books of said defendant bank, and was led to believe by the officers of said bank, and the matters and things set forth in said findings, that such transfer had been actually made by the proper officers of said bank, and that said bank had assumed said Randall's liability to him believing the said statement, pass-book and entry of the interest thereon to be true, and relying upon such belief said Archibald Nicholson accepted said statement and pass-book as giving the actual condition of his account with said bank; that on the eleventh day of February, 1897, said cashier, Murray, entered upon said pass-book one year's interest on said four thousand dollars; that immediately after it opened for business, in January, 1892, said defendant caused advertisements to be inserted in the newspapers announcing itself as the successor of A. W. Randall in the banking business; that after the formation of the defendant bank said Archibald Nicholson continued to deposit money with it and drew checks on the same just the same as he had previously done with A. W.

Randall; that A. W. Randall went out of the banking business immediately upon the formation of the defendant bank; and that several months prior to the failure of defendant bank said A. W. Randall mortgaged his entire property to said bank to secure eighty thousand dollars then due and owing from said Randall to said bank; that said defendant, the Randall Banking Company, transferred a large number of accounts, involving large amounts existing between the private depositors of A. W. Randall and himself at the time he went out of the banking business, from the books of said Randall's private bank to the books of the Randall Banking Company, and gave said depositors on its books credit for the amount due them as shown by Randall's books in the private bank, and charged the same in his book to A. W. Randall in its account headed: "The Randall Banking Company in account with the Randall Bank." That by its course of dealing with said Randall and his depositors in closing up his private banking business, and particularly by its dealings with Archibald Nicholson, deceased, in furnishing him with the statement and pass-book, showing it to be indebted to him in the sum of four thousand dollars or more, and charging itself with interest thereon, and by lending money to S. F. Pine on his account, and as being his, and upon all of which said Nicholson relied, he was thereby induced to look to said defendant bank for the amount due him instead of the said Randall, thereby losing any remedy he might have had against Randall, who at the closing of said defendant bank was not able to pay his debts out of his own means, and that it was understood and agreed between said parties that the Randall Banking Company should be and was substituted as the debtor to said Archibald Nicholson in the place of A. W. Randall with the intent to release said Randall of the amount due to said Nicholson from said Randall as a banker at the time that said Randall went out of the banking business and the defendant succeeded thereto.

It is not contended on the part of the appellant that the evidence does not support the findings in favor of the plaintiff, but errors are assigned in the admission of evidence, and it is also contended that there was an abuse of discretion in the refusal to grant a new trial on the showing made by the de-

fendant. It is claimed that the court erred in admitting the testimony of William Nicholson, the brother of the deceased, relative to the pass-book, on the ground that it was not the best evidence. It was, however, shown by testimony not subject to objection that the pass-book was issued by cashier Murray to the deceased, Nicholson, in the usual course of business, and that the contents of the pass-book were in Murray's handwriting, and the court did not err in admitting the pass-book in evidence, because its genuineness was fully established, and was one of the kind usually issued by defendant bank to its customers. It was not error in admitting the testimony of J. M. Melendy, former attorney of said Archibald Nicholson, deceased. His testimony was not in reference to privileged communications between said Nicholson and himself, nor his advice thereon. It is also claimed that the court erred in admitting the deposition of A. W. Randall, taken on the part of the plaintiff, as to certain matters stated by him in said deposition, but substantially the same matters were stated in his deposition taken on the part of defendant. In this deposition, taken on the part of defendant, Randall says that he recollects the formation of the Randall Banking Company in 1892, and "after the formation of that company they accepted certain securities of me. I allowed them to accept those that they allowed me to indorse without recourse. They were credited to me upon the books of the company. The money I held in my banking business was turned over to the company to my credit upon their books. Nothing was said about the liabilities of A. W. Randall. The business of A. W. Randall was understood to be transferred to the Randall Banking Company. . . . . There was a distinct understanding with me that my business was to be their business. I was to turn over my business to the new bank—transfer my customers to the bank. Had this understanding with the directors of the Randall Banking Company." There are some other objections to admission of testimony, merely stated but not argued, but we do not think them well taken.

The main contention on the part of the appellant is that the witness upon whom it mostly relied at the trial was the former cashier, J. S. Murray, and that when he was placed upon the

stand by the defendant he refused to answer questions on the ground that his answers might subject him to criminal prosecution. On this point the record shows the following:

"Q. Mr. Murray, I will ask you whether Archibald Nicholson, on or about the eleventh day of February, 1896, deposited with the Randall Banking Company the sum of four thousand dollars? A. I shall have to decline to answer the question.

"Mr. Wheeler.—Q. Upon what ground? A. On the ground that I have been arrested and have been prosecuted on account of matters arising out of my connection with the Randall Banking Company, and I have otherwise been subjected to a great deal of annoyance, and under the advice of counsel I decline to answer, because an answer to the question might possibly subject me to further prosecution, for the reason that the answer to the question might possibly tend to criminate me."

Several other questions in the same line were asked the witness, and he declined to answer them for the same reason. It appears from the witness' statement itself that the answers which he might make to the questions might possibly subject him to further prosecution, and might possibly tend to criminate him. It seems that he himself was not certain upon the point, and the court was not called upon to enforce an answer or to determine whether the witness was justified in refusing to answer, nor was any exception whatever taken. It is claimed on behalf of appellant that this conduct on the part of witness Murray was a great surprise to them and deprived them of an opportunity to present their case to the court, and, therefore, it was an abuse of discretion on the part of the court not to grant a new trial on this ground; the record, however, shows that the defendant had as witnesses in its behalf at the trial Guy L. Roberts, who was secretary of the Randall Banking Company, and succeeded Murray as cashier; also several of the directors of the said defendant banking company.

If Murray were to testify, as claimed by appellant he would on another trial, that Nicholson did not make the deposit of the four thousand dollars in defendant's bank, for which he

was given credit as stated, it would not follow that judgment should be given for defendant. It appears from the testimony that the business of Randall's private bank was turned over to the defendant bank, and the directors of said defendant bank permitted Murray, as cashier, to transfer accounts from Randall's private bank and render statements thereon showing that their accounts had been transferred to the Randall Banking Company. Whether they were so transferred on the books of said defendant bank or not, such customers, including Nicholson, were led to believe that their accounts had been properly transferred, and continued to deal with defendant bank accordingly. As stated in *Carpy v. Dowdell*, 115 Cal. 683, in a similar case: "Under these circumstances it is not necessary to determine what power the cashier had merely by virtue of his position as cashier; for when a corporation, by a long course of acquiescence, holds out an officer or agent as having authority to do certain things, it cannot after he has acted repudiate his acts." This rule is supported by many authorities. (Morse on Banks and Banking, 3d ed., sec. 171g, and cases there cited; *Martin v. Webb*, 110 U. S. 7; *Merchants' Nat. Bank v. State Nat. Bank*, 10 Wall. 604; *Carpy v. Philadelphia etc. Petroleum Co.*, 33 Cal. 694.)

Under the circumstances we think the defendant bank was in this case estopped from questioning its liability. "Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it." (Code Civ. Proc., sec. 1962, subd. 3. To the same effect see *Scott v. Jackson*, 89 Cal. 258; *Dolbeer v. Livingston*, 100 Cal. 617, 621; Bigelow on Estoppel, 4th ed., 445.)

Judgment and order affirmed.

Garoutte, J., and Harrison, J., concurred.