[L. A. No. 4751.   Department Two.—April 4, 1919.]

W. H. NEWTON, Respondent, v. JOHNSTON ORGAN & PIANO MANUFACTURING COMPANY (a Corporation), Appellant.

[1] CORPORATION LAW — CONTRACT EMPLOYING SUPERINTENDENT — OSTENSIBLE AUTHORITY OF OFFICERS—EVIDENCE.—Ostensible authority of the president and secretary of a corporation to execute a binding contract employing a general superintendent for the corporation is shown by proof that such officers were in control of the corporation's property, that they had the custody of and used the corporate seal, used the corporation's stationery, replied with apparent authority to telegrams directed to the corporation, paid the prospective employee's expenses to and from this state, and generally held themselves out as the authorized representatives of the corporation in such manner that the corporation and its directors

could not well have been ignorant of their assumption of ostensible power.

[2] ID.—HOLDING OUT OF PERSONS AS HAVING GENERAL AUTHORITY— OSTENSIBLE AGENCY—ESTOPPEL.—Where a corporation holds out to the world as its agents persons apparently clothed with power to transact its ordinary business, third parties will not be permitted to suffer from the acts of such agents by the corporation's attempted defense that the ostensible authority was not in fact conferred.

[3] ID.—CONTRACT FOR SERVICES OF EMPLOYEES—OSTENSIBLE AGENCY— LACK OF ACTUAL AUTHORITY—BY-LAWS AND MINUTES.—A showing of ostensible agency to contract for services of employees of a corporation cannot be overthrown by mere proof that the by-laws or minutes of the corporation failed to disclose actual authority of the president and secretary to so contract.

[4] ID.—ACTION FOR DAMAGES—BREACH OF CONTRACT OF EMPLOYMENT —ACTUAL AND PHYSICAL TENDER OF SERVICES. — In an action against a corporation for breach of contract to employ plaintiff, no actual and physical tender of services was necessary, where the plaintiff closed his business in another state and had prepared to come to this state, the gist of the action being the change of position caused by the conduct of defendant.

[5] ID.—EVIDENCE — MINUTES AND BY-LAWS PROPERLY EXCLUDED.— Where in such action, the trial court based its finding of agency exclusively upon the ostensible agency of the officers who signed the contract of employment, it was not error to exclude the minutes and the by-laws of the corporation offered by the corporation to show that its president and secretary had not been authorized to employ the plaintiff.

[6] ID.—BY-LAWS INADMISSIBLE AGAINST THIRD PERSONS WITHOUT KNOWLEDGE.—By-laws of a corporation are of no binding force upon third persons having no knowledge of them.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank Bryant for Appellant.

Gibson, Dunn & Crutcher and Jas. A. Gibson, Jr., for Respondent.

MELVIN, J.—Plaintiff sued successfully for damages for violation of a contract of employment. Defendant appeals from the judgment.

A contract in writing between the plaintiff and defendant was introduced in evidence. It was dated February 17, 1914, and recited that the Johnston Organ & Piano Manufacturing Company, a corporation organized under the laws of this state, has offered W. H. Newton of Boston, Massachusetts, employment as general superintendent of the corporation's factory at Van Nuys, for the term of three years, at a salary of three thousand dollars a year, payable two hundred dollars monthly in cash, and six hundred dollars in capital stock of the corporation at the end of each year's service; and that in addition to devoting his time to the corporation's business Newton was to assign all inventions made by him during his term of employment to the corporation. The agreement also contained the following language: "First party hereby agrees to employ second party under the terms hereinbefore expressed. Second party to start work upon thirty days' notice by first party. Salary above specified to commence after second party has started to work at the factory at Van Nuys." The instrument was subscribed by the name of plaintiff, by that of "Johnston Organ and Piano Mfg. Co.," with the corporate seal attached and the signatures of "E. S. Johnston, President" and "A. E. Streeter, Secretary."

It appears from the testimony, without material contradiction, that before and after the execution of the written instrument, the plaintiff, who was an expert in the manufacture, repair, and selling of church organs and pianos, was engaged in lucrative business in Boston, Massachusetts. He was approached by one A. P. Crandall, who represented himself as an employee of the defendant corporation, and they entered into negotiations relative to Mr. Newton's coming to California to become superintendent of the corporation's factory. After Crandall's return to California, plaintiff received a telegram from him asking plaintiff if he would come to California "to look the ground over" with a view to entering the employ of the defendant corporation. This was followed by another message stating the probable amount of the salary of superintendent at the factory in· Van Nuys, and asking how much money Mr. Newton would require for the expenses of the trip. Thereafter plaintiff received something more than two hundred dollars—the amount he had specified as necessary for the expenses of the journey. He then

went from Boston to Van Nuys. He was met at the car by Crandall, who escorted him to the factory of the Johnston Organ & Piano Company. There he met Mr. Johnston, president of the corporation, and Mr. Streeter, the secretary. Plaintiff conferred with them and with Mr. Bryant, who appears as counsel for defendant in this action. As a result of these conferences the written contract drawn by Mr. Bryant was executed. Mr. Johnston told Mr. Newton that he wanted the new superintendent to enter upon his duties as soon as possible, but that the company wanted to get rid of the superintendent then in their employ before doing anything further. While he was in California plaintiff's hotel bill was paid by the secretary of the defendant corporation. Mr. Newton returned to Boston, and on March 1, 1914, he telegraphed "E. S. Johnston or A. E. Streeter of the Johnston Organ and Piano Co.," asserting his anxiety to know how affairs were shaping themselves at the factory. This message elicited a prompt reply, which was in the following form:

"Mar. 2, '14.

"Wm. H. Newton, 4 Circuit Sq., Roxbury, Mass.

"Can arrange matters so you can take hold here any time wire when you can be here.

"Johnston Organ and Piano Mfg. Co."

Plaintiff wired in reply that he was closing out his business and would go to work at Van Nuys on April 15th. Thereafter plaintiff busied himself in closing out his business and in making preparations for the contemplated trip to California. On March 6th he received a letter, ostensibly from the company, on its letter paper containing the names of E. S. Johnston, president, and A. E. Streeter, secretary, asking him to use his own judgment about a man seeking employment with the corporation. On March 16, 1914, the plaintiff received a telegram which was as follows:

"Wm. H. Newton,

"4 Circuit Sq., Roxbury, Mass.

"Impossible to arrange matters here by fifteenth hold your affairs in abeyance until you hear further from us we are writing.

"Johnston Organ Co."

No letter reached plaintiff, and on March 25th he sent a telegram to Mr. Bryant, attorney for the corporation, by

by which he sought information about the promised letter. On the following day Mr. Streeter wired plaintiff that Mr. Johnston was very ill, and that the reason for the previous telegram was the unsettled financial condition. The telegram also contained the following sentence: "In fairness to yourself did not wish to have you come on until these conditions are satisfactorily settled which we anticipate shortly." On March 28th plaintiff wrote to Mr. Streeter, expressing regret at Mr. Johnston's illness. In this letter Mr. Newton informed Mr. Streeter that between March 1st and the 16th of that month he had done many acts, which he described, toward closing out his business in and around Boston. Receiving no answer to this letter he wrote again on August 3, 1914, to defendant's attorney, informing that gentleman that he must know the true situation at Van Nuys, and requesting an immediate reply. None was ever received.

There was further testimony tending to corroborate plaintiff's representations that he had closed up his business affairs on the strength of his supposed engagement by the Organ Company.

At the trial the defendant corporation called its secretary, Mr. Streeter, to identify its minutes and by-laws, and sought by him to show that the board of directors had never passed any resolution concerning the contract of employment, and that the president and secretary were not authorized to contract for the services of employees.

[1] It seems to be the theory of defendant's counsel that one dealing with officers assuming to represent a corporation is chargeable with notice of its creation and powers and the real authority of the supposed officers or agents with whom he deals, and that he proceeds at his peril. If this were the true rule the doctrine of ostensible agency would be swept aside entirely. That Johnston and Streeter were, respectively, the president and secretary of the corporation is conceded by the answer. It is admitted in appellant's briefs that by the introduction of the agreement, and of the names of the officers executing it on behalf of the corporation, plaintiff presented a *prima facie* case of due execution, but one (so runs the argument) subject to be overthrown by proof of the fact that original authority was lacking. But plaintiff did not merely introduce the contract. He showed that those persons assuming to act for the corporation were in fact in control of its property; that they had custody of and used

its corporate seal; that they used its stationery; that they replied with apparent authority to telegrams directed to the corporation; that they, or one of them, paid his expenses while coming to California, while remaining here in daily consultation at the factory, and while returning to Boston; and that generally they held themselves out as the authorized representatives of the corporation in such manner that the company and its directors could not well have been ignorant of their assumption of ostensible power.    [2]    Where a corporation holds out to the world as its agents persons apparently clothed with power to transact its ordinary business, third parties will not be permitted to suffer from the acts of such agents by the corporation's attempted defense that the ostensible authority was not in fact conferred.    (*Dore* v. *Southern Pacific Co.*, 163 Cal. 182, [124 Pac. 817]; *Stevens* v. *Selma Fruit Co., Inc.*, 18 Cal. App. 242, [123 Pac. 212]; *Aigeltinger* v. *Burke*, 176 Cal. 621, [169 Pac. 373].)    [3] The showing of ostensible agency was very strong and could not be overthrown by mere proof that the by-laws or minutes of the corporation failed to disclose actual authority of the president and secretary to contract for services of employees.

[4]    It is argued that plaintiff could have no cause of action until he had received the notice to come to Van Nuys in thirty days and had actually reported there for work; and that he may not recover on the *quantum meruit* until he has actually and physically tendered his services. Answering the last contention first, it is sufficient to say that this is not an action for wages or for work done, but one for damages for breach of a contract to employ plaintiff. It is governed by the rules declared in such cases as *Seymour* v. *Oelrichs*, 156 Cal. 782, [134 Am. St. Rep. 154, 106 Pac. 88]. The statement that no formal call to work in thirty days had been sent is met by the fact that defendant wired plaintiff that he could go to work at any time, and by its silence agreed that April 15th was a proper time. Evidently, the employment was considered settled because plaintiff was consulted regarding the hiring of one who was to be his subordinate in the factory. By closing his business in Boston and preparing for the trip to California plaintiff made a sufficient tender of his services. It would have been idle for him to make the trip to California after defendant had countermanded the order to report for

duty. The gist of his action was his change of position caused by the conduct of defendant. (*Seymour* v. *Oelrichs, supra.*)

[5] As the trial court based its finding of agency exclusively upon the ostensible agency of the officers who signed the contract of employment, it was not error to exclude the minutes offered by appellant to show that the president and secretary had not been authorized to employ a superintendent. (*Dore* v. *Southern Pacific Company, supra.*) [6] The by-laws were also properly excluded for the same reason and for the further one that they are of no binding force upon third persons having no knowledge of them. (*Rathbun* v. *Snow,* 123 N. Y. 343, [10 L. R. A. 355, 25 N. E. 379]; *Anglo-Californian Bank* v. *Grangers' Bank,* 63 Cal. 359.)

Appellant complains that the court admitted certain statements of one Crandall, and also letters and telegrams of Crandall to respondent, on the ground that Crandall had no connection with the corporation defendant. But there was evidence that the president, Mr. Johnston, told Mr. Newton that Mr. Crandall had been acting as Johnston's representative in the matter. Of course Crandall's own declarations could not establish his agency, but his course of conduct, coupled with that of defendant's officers and the uncontroverted declaration of the president, justified the court in admitting the testimony and exhibits to which objection is made. (*Bergtholdt* v. *Porter Bros. Co.,* 114 Cal. 681–690, [46 Pac. 738].) Besides there was a complete case without the evidence relating to Crandall.

Plaintiff sued for a sum equal to salary for three years, minus an amount something more than seven hundred dollars. Judgment was for three thousand dollars, which seems to have been correctly fixed by following the rule laid down in *Seymour* v. *Oelrichs, supra.*

No other alleged errors require examination.

The judgment is affirmed.

Lennon, J., and Wilbur, J., concurred.

Hearing in Bank denied.

All the Justices concurred.