[Civ. No. 11425. First Dist., Div. One. Aug. 6, 1941.]

COUNTY FIRST NATIONAL BANK OF SANTA CRUZ (a National Banking Association), Appellant, v. COAST DAIRIES & LAND COMPANY (a Corporation), Respondent.

Bias & Bias, Harry J. Bias and W. A. Deans for Appellant.

John Ralph Wilson and Bertrand F. Lurie for Respondent.

PETERS, P. J.—A rehearing was granted in this case in order to give further consideration to the contention of re-

spondent that there is evidence in the record to support the findings and judgment of the trial court. After again reading the record, we are convinced that the opinion heretofore filed correctly disposes of the appeal. We therefore adopt as the opinion of this court the opinion heretofore prepared, with certain omissions and additions.

Plaintiff appeals from a judgment in favor of defendant determining that defendant is not liable on a promissory note in the sum of $11,000 alleged to have been executed by defendant corporation by its general manager, L. Poletti. The trial court found that Poletti had neither express nor implied authority to execute the note; that the defendant had not ratified its execution; and that defendant was not estopped to deny such lack of authority. Plaintiff urges that these findings are not supported by the evidence.

The facts are not substantially in dispute. Defendant land company was organized in 1913, its officers and directors being L. Moretti, president; D. Morelli, vice-president, and A. E. Morelli, secretary-treasurer. Moretti, a substantial shareholder and the representative of other principal foreign shareholders, left this country in 1915 and took up his residence in Switzerland, returning to California only for short periods in 1919 and 1926. The interests of the Morellis in the company consisted in each holding a single share of stock so that he could qualify as officer and director. D. Morelli, who operated a general store on a profit sharing basis with defendant company, took little part in its general affairs until after 1934. In settling store accounts with the defendant he dealt with Moretti, when he was in this country, otherwise with L. Poletti, who had been employed by the company in 1918 as a bookkeeper, with the approval of Mr. Moretti, to assist A. E. Morelli. As vice-president, D. Morelli, in performing his corporate duties, merely signed any instruments presented to him for signature by either A. E. Morelli or L. Poletti. He further testified that, although he was a director and officer of the company, he paid little attention to its affairs; that he depended on Poletti for information; that he paid so little attention to its affairs that he did not know of a $250,000 mortgage that was placed on the defendant land company's properties.

A. E. Morelli testified that, while he participated in the general management of the company until 1930, when he

moved to Nevada, his time, prior to 1930, was occupied with other interests, and Poletti, who at first took over part of A. E. Morelli's duties, at all times from 1921 to 1934 acted as defendant's general manager. He further testified that he knew that Poletti signed notes and renewal notes on behalf of the defendant, and that this was done with his full knowledge and permission. In response to the question, "Did Mr. Poletti sign renewal notes with your permission?" he answered, "Yes, sir." When he was asked, "Did you advise him [Poletti] to sign any notes?" he replied, "Yes, sir; he was left there in charge, taking my place." Prior to 1921 A. E. Morelli had been general manager of the defendant, but he stated that after that date Poletti was "authorized" to take his place.

The uncontradicted evidence shows that between 1921 and December, 1934, when Poletti left the employ of the defendant company, he took full charge of all of the company's affairs, including those calling for discretion and judgment. He acted as the defendant's general manager. Generally speaking, he had charge of the office, including the corporate records and seal; he had charge of the money and finances of the company; he handled the leasing of acreages, although the leases were actually signed by an officer of the company; he fixed and collected rentals, depositing the collections to the credit of the company; he negotiated for the sale of real estate and made investments for the corporation; he settled litigation; he kept the company's books and paid the taxes; he prepared and sent to Mr. Moretti, and to the plaintiff bank, financial statements, some of which he signed as "Treasurer"; he made regular deposits to the credit of Moretti in a San Francisco bank out of the profits of the company.

The business relations between plaintiff and defendant, commenced in 1919 when defendant first opened an account with the bank, were carried on almost entirely by Poletti. Various signature cards were filed with the bank from 1919 to 1931 authorizing Poletti over his individual signature to draw checks on the company's account. During the period from 1921 to 1934, all correspondence by the defendant company with the bank was over Poletti's signature, and during all of such period he conducted business with the bank personally and by correspondence as general manager of the company. He rendered regular financial reports to

the bank as the representative of defendant. During one of Moretti's visits to California, in 1926, he told some of the officers of the bank that, in his absence, Poletti and A. E. Morelli would be in charge of, and handle, the company's affairs. All of the financial dealings, however, were carried on by Poletti, and the officers of the bank testified that they looked upon him as the Coast Dairies & Land Company.

During a visit of Moretti to California in 1919, he purchased a cannery and organized a corporation to operate it. The cannery had no operating capital. Moretti instructed Poletti and A. E. Morelli to borrow money from defendant company to start operations, instructing them further that if more money was needed, to borrow it from plaintiff bank. Pursuant to such instructions, various sums were borrowed from the bank by defendant upon defendant's credit; but, such sums, so borrowed, were used for the benefit of the canning company. All amounts so borrowed had been entirely repaid to the bank when the indebtedness forming the basis of this action was first incurred on April 28, 1925. On that date a promissory note for $15,000, payable to the bank, was executed by A. E. Morelli as secretary of defendant company and, pursuant to Poletti's instructions, this sum was credited to the account of the canning company at the bank. Concurrently, with the delivery of this note, there was filed with the bank a purported resolution of the directors of defendant company authorizing the borrowing of not to exceed $25,000, the president, or the vice-president or the secretary of the corporation to execute promissory notes for all sums so borrowed. It appears that all transactions by defendant company, including this, were handled in an altogether informal manner; that no directors' meetings were ever actually held, the resolutions and minutes being prepared by Poletti, and he and Morelli simply counting "the other directors in." Between 1921 and 1934 no directors' meetings were ever, in fact, held, although the record shows numerous "resolutions" including the one above-mentioned, "passed" by defendant company. After the original note of $15,000 was executed by A. E. Morelli on behalf of defendant in 1934, various payments of principal and interest were made by Poletti, acting for defendant, on the obligation. The note was frequently renewed by the execution of a new note and the cancella-

tion of the old one. Between 1925 and June 4, 1934, approximately ten renewal notes were executed. These renewal notes were signed either by A. E. Morelli or by Poletti. Each note purported to be an obligation of defendant company and bore the corporate seal. The renewal note which forms the basis of this action was executed on June 4, 1934, was payable six months from date, was in the sum of $11,000, and was signed "Coast Dairies & Land Co., By L. Poletti."

Both A. E. Morelli and Poletti testified positively that Moretti had instructed them to borrow from the bank the funds necessary for operating the cannery, and A. E. Morelli, the secretary-treasurer, not only signed the original obligation but had full knowledge of the existence of the indebtedness from the time it was incurred. Furthermore, as already indicated, he not only knew that Poletti signed some of the renewal notes, but also testified that they were signed by Poletti with his permission and authorization. D. Morelli, the vice-president and a director, testified that he had no knowledge of the matter until after 1934. While in a letter from Moretti to the defendant dated September 12, 1931, he stated that he had not known of this indebtedness to the bank on account of money borrowed for the operation of the cannery until 1926 when he made a trip to this country; he also stated that at that time he had given instructions to pay the obligation out of proceeds of the canning business. The cannery was later transferred to the defendant company in satisfaction of the former's note to it, but the defendant refused either to renew its note with the bank or to pay the same, and this suit is brought for the collection thereof.

As already indicated, the original indebtedness of April 28, 1925, was evidenced by the note signed by A. E. Morelli under proper authorization from the company. This note was renewed many times by either Morelli, or Poletti, under authority from Morelli, and while, as respondent contends, there was no proper authorization at the bank for permitting Poletti to borrow for the account of the company, the renewals, which preserved the credit of the company, were without dissent on its part, and payments thereon, both of principal and interest, were made through Poletti for the account of the company. There had at no time since Poletti commenced dealing with the bank in 1919 as an em-

ployee of the company, been any repudiation by the company of his activities in its behalf.

It should also be noted that Poletti was a director of the plaintiff bank at the time of the execution of the note sued upon; that, although D. Morelli, a director and the vice-president of the company, had no knowledge of the note until 1934, up to that time he had executed all leases for the company; that Poletti personally paid interest and renewal notes purportedly on behalf of the company without making entries thereof on the company's books, an examination of which, without independent investigation, would not have revealed the company's liability to the bank on the note; that financial statements furnished the bank in accordance with the books of the company did not represent its actual financial condition in that the liability on the note to the bank for money furnished the canning company in the conduct of its business was omitted; that the bank knew of this obligation and that the money so secured was used for the benefit of the canning company.

These are the uncontradicted facts. Appellant urges that Poletti, as general manager of the defendant, had authority to renew the overdue note which represented a lawfully incurred obligation of respondent; that knowledge on the part of a majority of the company's officers and directors of his action, and of the numerous payments made on account of principal and interest of such renewal, constituted a ratification by the corporation of the execution of the note by Poletti; that respondent is estopped to deny Poletti's authority to execute such renewals where it knowingly permitted the making thereof, and the payment of principal and interest thereon, and where the payee believed in good faith that the general manager had authority to renew the notes.

Respondent contends that by resolution it permitted the execution of notes in its behalf by the president, vice-president or secretary; that copy of such resolution was filed with the bank and in force at all times; that renewal notes, executed without the authority of respondent company, did not constitute a valid and binding obligation of the company.

The trial court based its judgment that respondent was not liable on the note on the findings that neither precedent nor subsequent authority had been conferred on Poletti, and

that, under the facts, the defendant was not estopped to deny Poletti's authority.

The problem presented involves no weighing of the evidence. We are well aware of the rule that this court, as an appellate court, has no power to weigh the evidence, and that all conflicts must be resolved in favor of the lower court. We are also aware of the rule that, in passing on the evidence, all reasonable inferences therefrom must be indulged in to support the judgment. These rules have no application to the problem here involved. Here there is no conflict. The case is one where all the material facts are admitted, and the question presented is whether or not, under these facts, the defendant, as a matter of law, is liable. That is not a fact question at all. It is a question of law, which, in our opinion, was incorrectly decided by the trial court.

The facts establish a clear case of estoppel, if not a case of implied authority. They establish that defendant company had a three-man board of directors, and that each of the directors was an officer. L. Moretti was a director, president, a large shareholder and the representative of several foreign shareholders. He left this country in 1915, and returned for two short visits, one in 1919 and one in 1926. He corresponded with the company occasionally by letter on matters of general policy. Other than this, he did nothing in the performance of his important duties as president and director. He knew of the original obligation incurred in 1925, and ratified it by ordering it paid. From 1921 to 1934 he was apparently content to let Poletti handle all the details of the company's business.

D. Morelli was vice-president and a director. He owned but a single qualifying share, for which he paid nothing. He admitted that during all the period here relevant he took no interest or active part in the affairs of the company. He was content to let Poletti handle all the affairs of the company.

A. E. Morelli was the secretary-treasurer, and the third director. He, too, owned but a single qualifying share, for which he had paid nothing. He was the only officer or director who took active interest in the business. In 1930 he moved from California, and his time was entirely taken up with other affairs. He knew of the fact that prior to 1930 Poletti had executed several of the notes renewing the obli-

gation forming the basis of this action. He approved and authorized the execution of these notes by Poletti.

So far as plaintiff bank is concerned, they were dealing with the man that they knew was in full charge of the defendant's business. They had been told in 1926 by Moretti, a large stockholder, president and director, that Poletti was one of the two men who had authority to handle the company's affairs. Between 1925 and 1934 they knew that Poletti had executed many of the renewal notes, and that his authority had not been questioned. The bank knew that prior to 1925 the respondent had borrowed on behalf of the canning company large sums of money, and that all of said loans had been repaid by Poletti. They knew his authority to pay these notes had never been questioned. Large balances were carried in the bank account of defendant, and most, if not all, checks were signed by Poletti. All correspondence of the plaintiff was answered by Poletti. Reports, some of which were signed "Treasurer," were frequently received signed by Poletti. While it is true that in 1925 a copy of a purported resolution was delivered to them authorizing certain officers to execute notes, and while it is true that Poletti's name did not appear therein, this does not bar them from recovery in this case. They were reasonably entitled to believe, from all the facts heretofore recounted, that Poletti had been subsequently authorized to act. While it is the general rule that a lending agency, in accepting a note from a corporation, should insist on a corporate resolution authorizing the officer executing the note to execute such instruments, the failure to secure a copy of such resolution will not, in all cases, bar relief. Certainly, relief should not be denied where the lending agency reasonably relies on a condition created by the borrowing corporation.

The above recounted facts, in our opinion, establish, as a matter of law, that either Poletti had actual implied authority to execute the note, or that the defendant is estopped to deny his authority. First, as to actual authority. ██ It is a fundamental and elementary rule of agency that an agency may be proved by evidence of facts showing that the alleged agent acted as such with the knowledge and acquiescence of the principal. (*Mattison* v. *Italo Petroleum Corp.*, 137 Cal. App. 148 [29 Pac. (2d) 901].) ██ This principle has pecu-

liar application to the facts here involved. Poletti was originally employed with the knowledge and acquiescence of the board of directors. From 1921 to 1934, with the knowledge and acquiescence of the board, he was in full charge of all the money and finances of the company. No one made any attempt to question or disapprove anything done by him. The record is full of instances where Poletti exercised, and by necessity was compelled to exercise, duties involving discretion and judgment. The directors knew the general scope of his functions and knew generally what he was doing. Moretti was apparently willing to trust A. E. Morelli to generally supervise matters. A. E. Morelli knew of the renewal notes, approved and authorized them.

Under the circumstances here existing, it would seem that the board of directors certainly caused Poletti to believe he had the authority to execute the notes. It is not indispensable that actual authority be shown by an express agreement. It may also be shown by facts which demonstrate that the principal, by lack of ordinary care, led the agent to believe, reasonably, that he possessed the power in question. Civil Code, section 2316, provides:

"Actual authority is such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess." (See, also, *Venice* v. *Short Line Beach Land Co.*, 180 Cal. 447 [181 Pac. 658].)

A case somewhat similar to the one here involved is *Union Oil Co.* v. *Purissima Hills Oil Co.*, 181 Cal. 479 [185 Pac. 381]. In that case, the president of a corporation, who was also the managing officer, acknowledged the existence of a debt of the corporation validly incurred after the running of the statute of limitations. In the instant case, the managing officer executed renewal notes representing an obligation validly incurred. In the Union Oil Co. case, *supra,* the court, in holding that the corporation was bound by the acts of the president, stated (p. 482) : "It is unnecessary to determine whether the last payment alone would take the matter out of the statute of limitations because in addition to that very significant partial settlement of the debt, the defendant did in writing acknowledge the said obligation less than four years before the filing of the complaint. It is true that the letters of acknowledgment, written upon the stationery of

defendant, were signed by Mr. Broughton personally. Appellant's principal contention is that he had no power to bind the corporation, but the court properly found to the contrary. By the by-laws the president was authorized *in his discretion* to proceed with the business of developing the land of the company. He was authorized to procure a drilling rig and all necessary appliances. True, he was to have, 'subject to the advice of the directors,' direction of the affairs of the corporation, yet their minutes fail to show any meeting of the directory between February 26, 1908, and January 1, 1913. He, and he alone, conducted all business with the assignor of plaintiff. He, and he only, replied to letters addressed to the corporation. It is apparent from all of these facts that defendant is bound by his acts as the managing officer of the corporation, which may not now, after so long acquiescence, repudiate his negotiations with plaintiff's assignor. (Code Civ. Proc., sec. 1962, subd. 3; *Nicholson* v. *Randall Banking Co.*, 130 Cal. 533 [62 Pac. 930]; *Chandler* v. *Hart,* 161 Cal. 405 [Ann. Cas. 1913B, 1094, 119 Pac. 516]; *Newton* v. *Johnston Organ & Piano Mfg. Co.,* 180 Cal. 185 [180 Pac. 7].)''

█ The only evidence relied upon by respondent as indicating a contrary result are the letters sent by Moretti to the defendant company in 1931. In the letter dated September 12th of that year he stated that he had just learned ''with great astonishment'' that the bank still held the notes of defendant growing out of the canning company transaction. He then states that he learned of the original transaction upon his arrival in California in 1926 and that ''the entire transaction was right then and there disapproved by me.'' But he also states that he ordered the note paid from the proceeds of the sale of the canning company's canned goods, and that, ''it seems to us'' that the notes do not have to be paid because they were not authorized by the board of directors. In 1931 the amount outstanding on the notes to the bank was $12,500. It is to be noted that in this letter Moretti admitted that the original transaction had been ratified by him, and that the notes were ordered paid. It is true that Poletti and A. E. Morelli did not strictly follow the instructions contained in that letter. The evidence shows, however, that the reason was that $7,674.96 was received on the sale of

the canned goods and that $5,174.96 of that had to be expended to save the canning company from attachment and complete loss of its physical equipment. $2,500 was applied on the note. The evidence, without conflict, also shows that Poletti had tried to liquidate the canning company so that money could be secured to pay off the note, but that he had had great trouble in finding a purchaser, and that, when a purchaser was secured, the deal later fell through. Moretti was informed of all these facts in 1931. He admittedly did not inform the plaintiff bank of his position and permitted them to continue to deal with Poletti as before. Poletti was certainly led to believe he had authority to handle the canning company transaction in the manner he did. Under these circumstances, it would seem that a clear case of actual implied power was established by the evidence.

██ Moreover, and aside from the question of implied authority, the evidence establishes a clear case of ostensible authority. Section 2317 of the Civil Code provides that: ''Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess.'' This section embodies in statutory form one phase of the doctrine of estoppel. (*Donnelly* v. *San Francisco Bridge Co.*, 117 Cal. 417 [49 Pac. 559]; *Wiley B. Allen Co.* v. *Wood,* 32 Cal. App. 76 [162 Pac. 121].) It has been held that the above-quoted statutory provision applies, and an ostensible agency is created, where the business done by the supposed agent, so far as open to the observation of third parties, is consistent with the existence of an agency, and where, as to the transaction in question, the third party was justified in believing that an agency existed. (*Buckley* v. *Silverberg,* 113 Cal. 673 [45 Pac. 804].) The two essential elements of an ostensible agency are: (1) the third person must believe that the agent had authority; and (2) such belief must be generated by some act or neglect of the person or company to be held. (*Harris* v. *San Diego Flume Co.,* 87 Cal. 526 [25 Pac. 758].) Evidence that similar acts of the agent were approved by the principal establishes ostensible authority, if the other element of belief is present. (See cases collected and commented on in 1 Cal. Jur., p. 742, sec. 42.)

██ These principles establish, as a matter of law, the existence of an ostensible authority in the present case. Cer-

tainly, the plaintiff believed Poletti had authority. The un-contradicted evidence is that the bank looked upon Poletti as the Coast Dairies & Land Company. This belief on the part of the bank was generated by the acts and neglect of the members of the board of directors of defendant. Moretti had told the bank that Poletti and A. E. Morelli had authority. Other notes were executed by the respondent corporation on behalf of the canning company and paid by Poletti to the bank without objection by defendant. With the exception of A. E. Morelli (who knew of, and approved, the execution of the notes), neither of the two other directors made any attempt to discover what Poletti was doing, and were apparently willing to let Poletti manage the affairs of the company. As directors and officers of the company, it was their duty to know what was being done by Poletti and how he was performing his duties as general manager. They cannot be permitted to disregard their duties for thirteen or fourteen years, and then, after receiving the benefits of the transaction, and when the particular transaction does not turn out advantageously, as an afterthought, contend that their agent was unauthorized to perform the questioned act.

None of the cases cited by respondent, including the case of *Montrose Land & Inv. Co.* v. *Greeley Nat. Bank*, 78 Colo. 240 [241 Pac. 527], compel a contrary conclusion. None of the cited cases involved a state of facts demonstrating such a disregard for their duties on the part of the board of directors as is shown in this case. Nor did any of the cases, including the Colorado case, involve a situation where over the years the agent had signed other notes which had been paid by the corporation.

The judgment appealed from is reversed.

Knight, J., concurred.

WARD, J., Dissenting.—I dissent.

The argument on the resubmission of this appeal convinced me that the original opinion filed contained certain inaccurate statements of fact, inadvertently made, which led to incorrect legal conclusions. The present majority opinion is an adoption of the previous opinion "with certain omissions and additions." I do not believe the "additions" sufficiently

portray the factual background which justified the trial court in rendering judgment in favor of respondent.

Taking into consideration matters stressed in the petition for rehearing, and subsequently in oral argument, the facts appear as follows: L. Moretti, who spent the greater part of his time in Switzerland, caused to be incorporated a company which, for the sake of brevity, may be referred to as the land company. The board of directors consisted of Moretti, A. E. Morelli and D. Morelli, the Morellis each holding one share of stock and acting as secretary-treasurer and vice-president of the company respectively. As subsequent events proved the Morellis were merely dummy directors. Poletti was employed by the company as a bookkeeper and accountant. Some time thereafter, the canning company referred to in the majority opinion was organized, and, needing funds for operation, Moretti agreed that the land company might borrow from appellant bank the sum of ten thousand dollars to be placed to the credit of the canning company. Such indebtedness, however, was to be repaid by that company. From such time until the date of the obligation of April, 1925, in connection with the latest renewal of which this suit arose, various amounts borrowed for the use of the canning company were repaid the bank. On April 28, 1925, bookkeeper Poletti, who had assumed enlarged managerial responsibilities, without objection at least from the two Morellis, obtained a loan from the bank for $15,000 ($5,000 in excess of the amount originally authorized by Moretti). The note evidencing this indebtedness was signed by A. E. Morelli as secretary. There was also furnished the bank in this connection a copy of a resolution authorizing the loan, certified by secretary Morelli to have been adopted at a purported meeting of the board of directors of the land company. While notes renewing this loan were made from time to time, the indebtedness was never fully paid. Bookkeeper Poletti subsequently became a director of appellant bank, after which the bank dispensed with the requirement of the name of an official of the land company in connection with renewals, simply advancing the money to the canning company, debiting the account of the land company and taking the latter's notes signed by Poletti. Notices of default in interest payments were mailed by the bank to the land company but when paid were marked "Paid by Poletti." At

various times financial statements of the land company, prepared by the land company's bookkeeper Poletti, were furnished the bank of which, as we have seen, Poletti was a director. These statements did not show the indebtedness to the bank. Copies of such—to put it mildly—inaccurate financial statements were forwarded to Moretti in Switzerland. If nothing further appeared, there would be no divergence of opinion as to the propriety of affirming the judgment rendered by the trial court. The problem seems to be simple, but, as said by Mr. Justice Kelly, *pro tem.*, in *Bank of America* v. *National Funding Corp.*, 45 Cal. App. (2d) 320 [114 Pac. (2d) 49], "at this point simplicity departs," and I may add, harmony of views with my learned associates on the facts, reasonable inferences deducible therefrom and the law applicable thereto.

The majority opinion holds that "the facts establish a clear case of estoppel, if not a case of implied authority." In support of the theory that there was an implied authority bestowed upon the bookkeeper-manager Poletti to sign the promissory note in question, the majority opinion cites *Union Oil Co.* v. *Purissima Hills Oil Co.*, 181 Cal. 479 [185 Pac. 381]. In the Union Oil case, it was an officer of the corporation, the president-manager, who was, not impliedly, but expressly, authorized by the by-laws of the corporation to procure necessary appliances to conduct the business of the corporation. In the majority opinion herein attention is also called to the fact that A. E. Morelli in substance testified that he approved the signing of the notes by Poletti; in fact, that he authorized Poletti to sign. A. E. Morelli could not bestow any greater authority than he possessed. If a director, secretary or treasurer may, without direct authorization of a corporation, deputize its manager, assuming Poletti occupied such position, to borrow money in its behalf, then there is no legal reason, with the majority opinion as a precedent, why a bookkeeper, an ordinary clerk or the office boy may not be so deputized. The fact is that A. E. Morelli retired from active participation in the affairs of the company in the summer of 1930. The note in controversy is dated June 4, 1934. Many of the preceding notes have been lost, though several were introduced as exhibits. The note dated May 5, 1924, for $20,000, signed by A. E. Morelli as secretary of the land company was paid in cash. All of the notes subsequent to the

resignation of A. E. Morelli were signed in the name of the land company "by L. Poletti," without any designation of position as manager or otherwise. From the inception of the transaction, payments of principal and interest were made principally by check drawn on the account of the company; some, however, were made from Poletti's personal funds, the bank's records bearing the notation "paid by Poletti" or some equivalent indication that payment had been made by him and not the land corporation. It is true that upon a few occasions Poletti signed various communications as manager, treasurer or secretary. He claims that when A. E. Morelli severed his connection with the corporation, he appointed Poletti assistant secretary and treasurer. Assuming this to be true, A. E. Morelli had no authority to appoint or recognize Poletti in any capacity except bookkeeper. It is noteworthy that Poletti did not sign his letters to Moretti in Switzerland, the person who controlled the corporation, as secretary or otherwise. Likewise it is noteworthy that D. Morelli, the vice-president, was always available to sign any document that required the signature of an officer of the company. Also, it is interesting to find that all contracts, leases, etc., during this period were signed by D. Morelli, with the exception of the promissory notes connected with this transaction, and that the vice-president, D. Morelli, did not know of the indebtedness to the bank until after the 1934 note had been signed by Poletti.

In 1931 Moretti, by letter to the land company, expressed "great astonishment" that the bank still held a note against the land company and that the amount was in excess of $10,000. He stated that he had disapproved of the entire transaction in 1926; that he had directed the indebtedness to be paid from the funds of the canning company; that he believed the land company should be indemnified and that at any rate the land company should not be responsible as it appeared the loans were made without approval of its board of directors. Poletti replied in substance that everything had been done to comply with the previous directions of Moretti. He held out hope that the cannery financial difficulties would be cleared up, the canning plant sold and the bank paid. Moretti responded advising Poletti's withdrawal from the company, and suggesting that Poletti arrange matters with a Mr. Respini, who would thereafter represent Moretti. There

is no evidence that Respini approved the continuation of the loans from the bank. Poletti did not withdraw but continued to make the loans purportedly obligating the land company by his personal signature. Poletti's purpose in disobeying Moretti's instruction appears in the evidence. Poletti did not own any interest in the land company, but he did hold stock in the canning company. It was important to him that the canning company continue in business, as evidenced by his statement "I am personally losing the snug sum of more than $8,000."

The bank knew it had no authority to loan the money to the land company on Poletti's signature. A purported authorization on file did not confer such power upon him. Poletti testified that the bank never asked him for his authority to sign the various notes. The bank attempted some explanation that Poletti was an assistant secretary of the land company, and that it held a card signifying such fact. The card could not be found. If in fact such a card had been filed with the bank, the bank nevertheless did not request Poletti to sign as assistant secretary or otherwise. No act conferring upon Poletti ostensible authority to negotiate the loans for the company was ever communicated to the bank. The bank knew or should have known that the loans did not appear upon the financial statements rendered. It knew that certain principal and interest payments had been made by Poletti personally. The evidence shows that the bank relied upon the acts of bank director Poletti and not upon the declarations of the land company.

Moretti in Switzerland had a right to assume that Poletti would follow his instructions, and there was no reason for him to suppose that the bank would permit an unauthorized bookkeeper to negotiate a loan obligating the land company. Neither the land company, nor Moretti, its principal stockholder, was ever apprised of the real facts, and the bank knew, or should have known, that Poletti was not authorized to make the loan. The doctrine of estoppel is not applicable to the facts of this case. Moretti's silence with regard to a matter of which he was unaware could not amount to a ratification. Morelli's purported delegation of authority was unauthorized and not even communicated to the bank. If the bank was misled, it was only through the conduct of one of

its directors. (See *Montrose Land & Inv. Co.* v. *Greeley Nat. Bank,* 78 Colo. 240 [241 Pac. 527].)

In my opinion the evidence is amply sufficient to sustain the findings of the trial court, and, for the reasons stated, it is my conclusion that the judgment herein should be affirmed.

Respondent's petition for a hearing by the Supreme Court was denied October 2, 1941.